[Civ. No. 35634. Second Dist., Div. Four. Nov. 25, 1970.]

HARVEY S. WHISTLER et al., Plaintiffs and Appellants, v. ONDULANDO HIGHLANDS CORPORATION et al., Defendants and Respondents.

## COUNSEL

Wayne Hunkins for Plaintiffs and Appellants.

Halde, Barrymore & Stevens, Carroll Barrymore, Griffith & Thornburgh and F. Brian Rapp for Defendants and Respondents.

## OPINION

**FRAMPTON, J.**\*—Plaintiffs Harvey S. Whistler and Georgeanna K. Whistler, husband and wife (hereafter Whistler) filed their amended complaint setting forth eight causes of action.

The first cause of action alleges in substance that in April 1963 Whistler entered into a contract in writing with defendant Ondulando Highlands Corporation (hereafter Ondulando) for the purchase of a home. That the purchase price of the property was $27,950. Whistler paid the sum of $3,150 as a down payment on the property and assumed a loan thereon in the sum of $24,800 evidenced by a promissory note secured by a deed of trust. Title to the property was transferred to Whistler subject to the deed of trust. The sale of the property constituted an original sale of a portion of a subdivision as described in section 11000 of the Business and Professions Code. That Ondulando, through its agent, defendant All Coast. Construction Co. Inc. (hereafter All Coast), and its contractor, defendant Robert R. Pender (hereafter Pender), manufactured, designed and assembled the lot and artificially constructed a building site with approximately 40 feet of fill, and thereupon constructed a family residence dwelling to be used as a single family residence. Ondulando knew that the lot and dwelling would be purchased and used without inspection for defects. The resulting product was defective and unsafe in that the filled lot and faulty construction of the house caused the latter to settle and slide thereby creating a substantial risk of collapse.

The second cause of action incorporates the foregoing allegations of the first cause of action and alleges further that All Coast and Pender, the qualifying licensed contractor for All Coast, acting in concert with Ondulando, did negligently prepare the building site as part of the structure and negligently constructed the dwelling thereon, resulting in large scale cracks in the walls, ceilings and foundation, the warping of cabinets and doors, and causing other divers structural defects.

The third cause of action incorporates certain allegations of the first cause of action and alleges further that the defendants, acting in concert as alleged in the first cause of action, warranted through their agents, defendants Howard M. Ferguson and Howard Miller Ferguson Real Estate (hereafter Ferguson), before the execution of the contract of purchase that the property was of merchantable quality and was fit for the purpose for which it was sold, to wit, a residence and shelter for human beings. That

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

said warranty was false. Whistler discovered the falsity of the warranty and gave due and timely notice of the breach thereof.

The fourth cause of action incorporated certain allegations contained in the first cause of action and alleged further that defendants, acting in concert as alleged in the first cause of action, represented to Whistler through Ferguson, their real estate broker, that the house was built in good and workmanlike manner upon soil that had been compacted to the degree that it was as good or better than natural earth. That such representations were false and were known by the defendants to be false. That Whistler believed such representations and relied thereon to their damage.

The fifth cause of action was abandoned at pretrial.

The sixth cause of action incorporates certain paragraphs of the fifth cause of action and alleges further failure of consideration, notice of rescission and offer to restore benefits received by Whistler.

The seventh cause of action incorporates certain allegations of the sixth cause of action and alleges further a mutual mistake of fact as to the suitability of the property for residential purposes, notice of rescission and offer to restore benefits received by Whistler.

The eighth cause of action incorporates substantially all of the allegations contained in the first cause of action and alleges further that Ondulando and Ferguson wilfully and knowingly sold Whistler a defective product the result of which was to cause Whistler to live in a house which is suffering catastrophic ruin and damage. That Whistlers have been forced to provide repairs by invading and destroying their savings which had been set aside for their retirement thus causing them gross mental suffering, various physical disorders and loss of personal esteem in which they were held in the community.

The prayer of the complaint sought an adjudication that the contract had been rescinded and asked, on the first seven causes of action, for consequential damages, punitive and exemplary damages against Ferguson, costs and reasonable attorneys' fees or, in the alternative, if rescission was denied then the prayer asked for general damages, special damages, punitive damages and costs and attorneys' fees. The prayer asked for general damages, and for special damages as to the eighth cause of action.

At pretrial, on motion of Whistler, the court ordered a bifurcated trial, and ordered that the equitable issues bearing upon rescission as set forth in the sixth and seventh causes of action be first tried by the court sitting without a jury, and that all other issues raised by the amended complaint,

the answers and the cross-complaint, not determined by the court sitting without a jury in the first phase of the trial be thereafter tried before a jury.

The matter was set for trial for August 27, 1968, and was assigned to be heard before Judge Richard C. Heaton. At this point, Buena Engineering, a cross-defendant, filed an affidavit of disqualification, pursuant to section 170.6 of the Code of Civil Procedure, against Judge Heaton, whereupon the matter was transferred and heard by Judge William A. Reppy.

After trial on the equitable issues the court on December 5, 1968, filed its findings of fact and conclusions of law as follows:

"1. At all times herein mentioned, the defendant, ONDULANDO HIGHLANDS CORPORATION (hereinafter referred to as ONDULANDO), was and is a California corporation, doing business in Ventura County, California.

"2. The defendant, ONDULANDO, was the developer, subdivider, and improver of a residential subdivision within the County of Ventura known as Ondulando Tract #1435.

"3. The defendant, ONDULANDO, had the firm of FERGUSON REALTY as its sales agent. Said FERGUSON REALTY was owned by HOWARD M. FERGUSON, who was also president of the defendant, ONDULANDO. CLIFFORD KOHLHAAS was the sales manager of FERGUSON REALTY.

"4. Plaintiffs viewed the tract and previous tracts in the same area developed previously by the defendant, ONDULANDO, and spoke with HOWARD M. FERGUSON and CLIFFORD KOHLHAAS, representing ONDULANDO.

"5. The WHISTLERS initially expressly required that special modifications and improvements be incorporated into the premises by ONDULANDO so that they would be suitable for use by plaintiffs in their occupation as authors and as composers of music. WHISTLERS further required additional improvements, part of which were to be installed by ONDULANDO, part of which by others, but the general nature and extent of which were made known to ONDULANDO. Thereafter, WHISTLERS made further improvements to the premises by way of venetian blinds, traverse rods for drapes, book shelves, music equipment, light fixtures, special sealing paint on the exterior, landscaping, exterior brickwork and numerous small improvements.

"6. WHISTLERS further expressly required that the lot on which the home was to be constructed was to be a lot graded from natural soils that contained no man-placed fill.

"7. HOWARD M. FERGUSON, acting for ONDULANDO, expressly told WHISTLERS that lot 204 of tract 1435 was a cut lot; contained no fill and

that the desired improvements could be incorporated. The WHISTLERS relied on these representations in giving their consent.

"8. During April, 1963, defendant ONDULANDO and plaintiffs entered into a written agreement wherein plaintiffs agreed to purchase and ONDU-LANDO to sell lot 204 of tract 1435 along with a house to be constructed thereon to the special requirements of WHISTLERS.

"9. Said sale was to be for the price of $27,950.00 to be paid $3,150.00 down and by obtaining a loan of $24,800.00 from California Federal Savings & Loan Association.

"10. Pursuant to said agreement, WHISTLERS opened an escrow and ONDULANDO caused to be constructed a residential dwelling on lot 204 of tract 1435 to plans and specifications modified to suit the WHISTLERS' desires.

"11. About the middle of December, 1963, WHISTLERS took possession and occupied the premises.

"12. Before the close of escrow WHISTLERS paid into escrow the sum of $3,953.82.

"13. After moving in, WHISTLERS noticed cracks developing across the house. About January, 1967, the house developed severe cracks in the floor, ceilings and walls so as to be unsuitable for convenient, comfortable habitation.

"14. As a result of the defendant's failure to check their records and ONDULANDO's reliance on memory, both parties were mistaken as to the true nature of the lot in that both believed the lot to consist of foundation soils graded from natural earth rather than deep man-placed fill.

"15. The fill on the lot varied from 19 feet to 36 feet.

"16. Some of the subsequent damage to the house and yard was caused in part by movements related to the presence of fill on the lot.

"17. The nature and depth of the fill on the lot was such as to cause the lot to be an essentially different product than that bargained for.

"18. The existence of the fill on lot 204 significantly affected the value of said lot.

"19. WHISTLERS gave notice of rescission to ONDULANDO by filing of this suit.

"20. The water pipes located beneath the cement slab broke on several occasions and required major repairs in order to protect and preserve the property.

"21. ONDULANDO caused the fill to be placed on lot 204.

"22. The engineering firm hired by the defendant, ONDULANDO, kept engineering records of fill on tract 1435; said records contained documents showing lot 204 of tract 1435 to contain fill. ONDULANDO had ready access to this file and the information contained therein.

"23. The testing laboratory hired by the defendant, ONDULANDO, had prepared maps showing fill location and fill test reports on lot 204 of tract 1435, detailing the existence of fill and reporting on tests of said fill. Said maps were furnished to ONDULANDO.

"24. At the time the representative of ONDULANDO made the statement to the WHISTLERS that lot 204 was a cut lot, said representative relied on his faulty memory with respect to the engineering records and maps. Said representative did not check the records referred to in finding 22 or the maps and test reports referred to in finding 23 prior to making this representation.

"25. Pursuant to the loan agreement, WHISTLERS paid to California Federal Savings Association, the sum of $11,615.00, including principal, interest and impounds as of August 30, 1968.

"26. The agreement of the parties contemplated that WHISTLERS would incur loan costs as a part of the purchase agreement.

"27. The cost to WHISTLERS of the improvements to the premises, (as detailed in the memorandum of opinion) the necessary plumbing repairs and the estimated future expense for noticing their move total $11,010.31.

"28. Additional expenses to WHISTLERS will be incurred by way of moving costs; the reasonable cost of which is $400.00.

"29. The reasonable rental value of the premises was $230.00 per month from the date of occupation for the first 35½ months; that due to the progressive damage the reasonable rent thereafter being ⅔ that amount. The reasonable amount of rent therefore is a total of $11,845.00.

"CONCLUSIONS OF LAW

"1. As between ONDULANDO and the WHISTLERS, ONDULANDO had the greater obligation to avoid said mistake by reason that ONDULANDO is a large corporate developer whereas WHISTLERS were small single purchasers and that ONDULANDO had readily available sources of information which were not utilized. By reason of these facts, ONDULANDO is the culpable party causing the mistake.

"2. The reliance of WHISTLERS on the statement of the representative of ONDULANDO that the lot was cut and contained no fill was reasonable under the circumstances.

"3. There was no effective consent of the WHISTLERS in that a mistake of fact existed.

"4. WHISTLERS effected the rescission provided for under CC 1689 et seq and therefore they are thereby entitled to judgment for return of their consideration and for consequential damages.

"5. ONDULANDO should bear the major economic burden arising from the mistake by reason of said culpability, and on this basis the out of pocket rule should be applied in assessing the consequential damages.

"6. Defendants should have an offset in the amount of $11,845.00 for the reasonable value of occupancy from December 15, 1963 through November, 1968.

"7. Judgment should issue quieting title to lot 204 of tract 1435 in ONDULANDO and awarding damages to the plaintiffs against ONDULANDO in the net sum of $15,133.13 calculated as follows:

| | | |
|---|---|---|
| (a) | Funds into escrow | $ 3,952.82 |
| (b) | Improvements, landscaping, modifications, plumbing, repairs, etc., (per opinion) | $11,010.31 |
| (c) | Payments to California Federal Savings & Loan Association | $11,615.00 |
| (d) | Moving costs | $ 400.00 |
| | | $26,978.13 |
| | Less offset for use of house | $11,845.00 |
| | NET | $15,133.13 |

"8. WHISTLERS are entitled to interest on the net amount of the judgment from the date of signing the judgment on the net amount of the award stated in paragraph 7 herein. ONDULANDO shall be granted an offset from the amount of the judgment for the reasonable value of the WHISTLERS' occupation of the premises computed at the rate of $153.00 per month for each month of such continued occupation after November 30, 1968. Provided, however, that any future payments by the WHISTLERS of the mortgage payments to California Federal Savings and Loan Association shall be treated as paid to the benefit of ONDULANDO and in that event, no such offset shall accrue for any month in which such payment is made.

"9. Judgment shall await further proceedings to determine the remaining causes of action."

Further pretrial statements were filed between February 5 and February 19, 1969.

In plaintiffs' supplemental pretrial statement filed on February 5, 1969, they expressly abandoned the first, third and sixth causes of action, leaving only the second, fourth and eighth causes of action for determination.

On March 17, 1969, defendants Ondulando, Ferguson and Clifford Kohlhaas noticed their motion for summary judgment based upon the claim that plaintiffs had elected to proceed on their remedy of rescission. Attached to the declaration of Carroll Barrymore, one of the counsel for movants, is a letter under date of March 11, 1969, written by plaintiffs' counsel wherein he states that he does not intend to proceed further against Ondulando, and that he proposed to dismiss as against Kolhaas.

On March 18, 1969, All Coast and Pender noticed a motion for summary judgment on the second cause of action predicated upon the claim that plaintiffs had elected to rescind the contract as against Ondulando thereby estopping them from proceeding further on the tort action for damages.

On April 14, 1969, after hearing, the motions for summary judgment were granted.

On May 5, 1969, judgment was entered in favor of plaintiffs and against Ondulando, on the seventh cause of action, in the sum of $14,368.13 and costs in the amount of $678.81. On May 6, 1969, summary judgment was entered against plaintiffs and in favor of All Coast, Pender and Ferguson and against plaintiffs and in favor of Ondulando "under all causes of action except said Sixth Cause of Action stated against Ondulando Highlands Corporation only."[1]

The notice of appeal includes the judgment in favor of plaintiffs and against Ondulando on the seventh cause of action. No attack is made on this judgment in plaintiffs' brief. Plaintiffs' opening brief states that "Plaintiffs have indicated they will not proceed further against the defendant,

---

[1]We believe the exception here should relate to the seventh cause of action. The seventh cause of action was predicated upon rescission based upon mutual mistake of fact. Judge Reppy's "Memorandum of Opinion" refers to the bifurcated trial as being limited in proof to the question of mistake of fact. The findings and conclusions made at the conclusion of the first phase of the bifurcated trial disclose that they are based upon a finding of mutual mistake of fact. The sixth cause of action was predicated upon alleged failure of consideration. Since we reverse the summary judgment in its entirety, the clerical error loses its significance.

Ondulando, for the obvious reasons found in Judge Reppy's opinion; it in no way affects the other defendants." In this state of the record, if it was the intention of plaintiffs to appeal from the judgment in their favor and against Ondulando on the rescission cause of action, such appeal has been abandoned. The appeal otherwise is from the summary judgments rendered in favor of Crowell, All Coast, Pender and Ferguson.

### Contentions on Appeal

██ Plaintiffs urge that (1) Judge Heaton was disqualified to pass on the motions for summary judgment, and (2) the granting of the motions for summary judgment was erroneous.

### Disqualification of Judge

The record discloses that subsequent to the filing of the amended complaint, lengthy pretrial hearings were had and settlement conferences were had before Judge Heaton. Although the pleadings are not before us, the record discloses that Buena Engineering Services, Inc. (hereafter Buena), was named as a cross-defendant. The minutes disclose that Buena was present, through its counsel, at settlement conferences before Judge Heaton on June 7 and June 12, 1968. It was at the conference on June 12 that Judge Heaton granted plaintiffs' motion for bifurcation of the trial, thus severing the trial of the issues raised under the cross-complaint and confining the issues to those raised under the sixth and seventh causes of action in the amended complaint. On August 27, 1968, the date set for trial, in the master calendar department, when the trial was transferred to be heard by Judge Heaton, Buena filed its affidavit of prejudice against Judge Heaton under section 170.6 of the Code of Civil Procedure, whereupon the trial was transferred to be heard before Judge Reppy. The record does not disclose that plaintiffs joined with Buena in filing the affidavit of prejudice.

The minutes of August 27, 1968, disclose that Judge Reppy first conferred with all counsel in chambers, then proceeded, in open court, to outline and discuss the issues to be tried under the sixth and seventh causes of action pursuant to the order bifurcating the trial. At this time counsel for All Coast and Pender, and counsel for Buena announced that their clients were not involved in the sixth and seventh causes of action and stated further that they declined to participate in that phase of the trial.[2]

---

[2]Section 170.6 of the Code of Civil Procedure provides in pertinent part that "No judge. . . of any superior . . . court of the State of California shall try any civil . . . action or special proceeding of any kind or character nor hear any matter therein which involves a contested issue of law or fact when it shall be established as hereinafter provided that such judge . . . is prejudiced against any party or attorney or the interest of any party or attorney appearing in such action or proceeding."

From the foregoing record it is clear that Buena was not a party and did not claim to be a party interested in the outcome of the first phase of the bifurcated trial. Therefore, the affidavit of prejudice filed against Judge Heaton by Buena, not a party to that phase of the action to be tried, was incompetent to effect his disqualification to hear and determine the matters as they related only to the sixth and seventh causes of action. It may be noted further that plaintiffs never raised the issue of Judge Heaton's disqualification at the trial level. Instead, they proceeded to a hearing without objection, thereby consenting to the matter being heard by Judge Heaton. It was only after a trial and a ruling adverse to plaintiffs that they have raised the issue of disqualification for the first time on appeal.

## Election of Remedies

As heretofore pointed out, the second cause of action charged negligence against All Coast, Pender and Ondulando in the preparation of the site and the construction of the residence thereon, all of which was the proximate cause of plaintiffs' damages. The fourth cause of action sought general damages against Ondulando, Ferguson and All Coast for alleged fraudulent representation concerning the quality of the property which induced its purchase by plaintiffs. Plaintiffs also sought punitive damages against Ondulando and Ferguson under this cause of action. The eighth cause of action sounds in strict liability against Ondulando and Ferguson based upon the sale to plaintiffs of a defective product.

A joint and several judgment could be rendered against any one or all of the defendants named in these causes of action. Plaintiffs, however, having elected their remedy of rescission as against Ondulando, the seller under the contract, may not now further pursue their remedy against Ondulando under the causes of action in tort. This does not mean that they are estopped from proceeding further against the other alleged joint tortfeasors against whom they may, if successful, obtain a several judgment.

Section 579 of the Code of Civil Procedure provides that "In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment is proper."

The mere fact that plaintiffs obtained a judgment against Ondulando, although on the basis of rescission of the contract of sale and purchase between plaintiffs and Ondulando, does not estop or preclude plaintiffs from proceeding further on the tort action against Ondulando's alleged joint tortfeasors. (Cf. *Williams* v. *Reed,* 113 Cal.App.2d 195, 204 [248 P.2d 147]; *McNeely* v. *Superior Court,* 36 Cal.App. 602, 603-604 [173 P. 102]; 1 Witkin, Cal. Procedure, (1954) Actions, § 55, p. 553.) In these circum-

stances it was error to grant the summary judgments in favor of the alleged joint tortfeasors.

The appeal from the judgment in favor of plaintiffs and against Ondulando on the rescission action is dismissed. The summary judgments in favor of All Coast Construction, Inc., Donald Pender, Howard Miller Ferguson and Ferguson Realty Corporation are reversed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

The petitions for a rehearing were denied December 14, 1970, and respondents' petition for a hearing by the Supreme Court was denied January 21, 1971.