[No. B066667. Second Dist., Div. Seven. Sept. 2, 1992.]

SUNKYONG TRADING (H.K.) LTD., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
PINKERTON'S, INC., Real Party in Interest.

COUNSEL

Barry B. Langberg, Elizabeth Mann and Robert W. Conti for Petitioners.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

Paul, Hastings, Janofsky & Walker, Earl M. Benjamin and Jack A. Gould for Real Party in Interest.

OPINION

LILLIE, P. J.—Petitioners seek a writ of mandamus and/or prohibition to compel Judge Aurelio Munoz (1) to vacate that portion of his April 23, 1992 order severing the cross-complaint against cross-defendant Sunkyong Trading (H.K.) Ltd. (hereinafter SKT) from the action and (2) to transfer the entire lawsuit to Department One for reassignment to another judge. The primary issue in this proceeding is whether the trial court judge, after granting a peremptory challenge by a cross-defendant pursuant to Code of Civil Procedure section 170.6, had authority to sever the pleading involving that cross-defendant for reassignment, retaining the remainder of the action, or whether that disqualified judge was required to transfer the entire action for reassignment to another judge.

FACTUAL AND PROCEDURAL BACKGROUND

Pinkerton's second amended complaint asserts, "This lawsuit concerns defendants' fraudulent schemes, including the bribery of one of Plaintiff's

employees, in connection with procuring security guard uniforms for use in Plaintiff's business."

Pinkerton's further alleged that its former employee in charge of procuring security guard uniforms, Don Best, conspired with Michael Solin, president of California Apparel Imports, Inc. (CAI), an independent sales agent, to procure many more uniforms than were needed by Pinkerton's, which uniforms were also of low quality and poorly made; the uniforms were manufactured by Korea-based Sunkyong Limited (SKL) and imported through its American subsidiary, Sunkyong America, Inc. (SKA); SKA allegedly agreed with CAI to finance the purchase of the imported uniforms; SKA invoiced CAI for the cost of the uniforms plus an additional 7 percent commission; CAI and Michael Solin then allegedly invoiced Pinkerton's for the amount CAI paid to SKA, plus an additional mark up averaging nearly 40 percent, which allegedly included Don Best's "secret commission." The alleged secret commissions were paid by CAI and SKA to Don Best and his daughter, Barbara Best, and to Best Management, Inc. (BMI), whose president was Barbara Best.

Pinkerton's also alleged that "in order to ensure that Plaintiff would purchase uniforms exclusively through CAI, on or about August 11, 1988, Solin and Don Best secretly executed a document (the 'Uniform Purchase Agreement') which purported to require that plaintiff purchase certain types of garments exclusively through CAI for a thirty-six month period"; Best was not authorized to execute such an agreement on plaintiff's behalf and kept it a secret from plaintiff; in 1990, plaintiff learned that its security guards had serious complaints about the uniforms; plaintiff decided not to take title to future shipments of uniforms procured by CAI until it had subjected them to a quality control inspection; when a dispute arose regarding an August 1990 inspection, Solin and CAI changed the locks on the warehouse and denied plaintiff access to the uniforms; desperate for uniforms, plaintiff reluctantly signed a September 17, 1990 document purporting to waive certain rights against CAI with respect to defective uniforms, and also paid CAI and Solin over $1 million and assumed CAI's lease on the warehouse; plaintiff discovered that the warehouse was not only overstocked, but overstocked with uniforms below industry standards; Solin and CAI then wrongfully sued plaintiff for breach of the purported uniform purchase agreement and for purported 1991 orders allegedly solicited from Don Best in 1989. Plaintiff asserted against defendants various common law causes of action, as well as causes of action for damages for violation of various sections of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 United States Code section 1961 et seq.; plaintiff sought damages, rescission and restitution, declaratory relief and other equitable remedies.

Plaintiff's original complaint, filed in November 1990, named as defendants, other than Doe defendants, CAI and Michael Solin; the action was assigned to Individual Calendar (I/C) Judge Diane Wayne pursuant to the Los Angeles County Trial Court Delay Reduction Rules (see Super. Ct. L.A. County Rules, ch. 13); plaintiff filed a peremptory challenge pursuant to Code of Civil Procedure section 170.6 (hereinafter section 170.6) and Los Angeles County Superior Court Delay Reduction Rules, rule 1104.1 (see now rule 1304.1); the action was reassigned to Judge Aurelio Munoz; in October 1991, plaintiff filed a second amended complaint naming as defendants not only CAI and Solin, but SKA, SKL, Donald Best, Barbara Best and BMI. A similar complaint was filed in September 1991 in federal court, which action is currently stayed.

In February 1992, SKA and SKL filed a cross-complaint against Pinkerton's for, among other things, breach of contract; the cross-complaint also sought indemnity from Solin, CAI, Donald and Barbara Best, and a new party, cross-defendant Patricia Best, wife of Donald Best. Cross-defendant Patricia Best filed a peremptory challenge of Judge Munoz pursuant to section 170.6; on February 26, 1992, Judge Munoz found that the challenge was timely filed and in proper format and granted it; the order also stated that, "However, because of this Court's familiarity with the case and in light of prior orders, THE ACTION [INVOLVING CROSS-DEFENDANT] PATRICIA BEST IS SEVERED FROM THAT OF THE OTHER DEFENDANTS AND IS TRANSFERRED TO DEPARTMENT ONE FOR REASSIGNMENT."

The Bests, as well as SKA and SKL, sought reconsideration and modification of the February 26, 1992 order, which was denied.[1] Those same parties then filed in this court a petition for peremptory writs of mandamus and/or prohibition; we denied that petition as untimely; a petition for review in the California Supreme Court was denied.

---

[1]A March 12, 1992 minute order denying the request for reconsideration also states: "This court has had this case for over a year . . . . [T]he court ruled on a RICO motion and denied a demurrer to that motion. One of the defendants then named a new party as a cross-defendant in an indemnity action and that party filed a 170.6 motion against this court. This court severed that portion of the cross-complaint from the main case and transferred it to Department One for reassignment. The remaining defendants now assert that this court cannot have anything further to do with this case because the 170.6 deprived this court of any jurisdiction to sever that portion of the cross-complaint. There is no question that the challenging defendant is a member of the family of one of the defendants who has been in this case for about six months and counsel for that party has been candid enough to reveal to this court that the same firm who has been before this court in this case is going to represent the new cross-defendant. [¶] Under the circumstances before this court, the court is of the opinion that the filing of the 170.6 might deprive it of jurisdiction over the cross-complaint, but it does not deprive the court of jurisdiction over the complaint itself. To hold otherwise would mean that all a defendant has to do to defeat the time bars of 170.6 is to file a friendly cross-complaint and have the new cross-defendant assert the challenge."

In April 1992, defendants Solin and CAI filed a first amended cross-complaint which named as a new party cross-defendant SKT. SKT filed a peremptory challenge to Judge Munoz pursuant to section 170.6; an April 23, 1992, minute order stated that the challenge was timely and in proper format, and that "The peremptory challenge is granted as to the challenging cross-defendant. However because of this court's familiarity with this case and in light of the prior orders and history of the case, the action of cross-defendant Sunkyong Trading (H.K.) Ltd. is severed from that of the other defendants and is transferred to Department One for reassignment."

SKT, as well as SKA and SKL, timely filed petition for alternative and peremptory writs for mandamus and/or prohibition or other extraordinary relief and request for stay. On May 6, 1992, we issued an order that "Pending further order of this court, all proceedings before Judge Aurelio Munoz in . . . case number BC014779 are hereby stayed." On May 14, 1992, we issued order to show cause and alternative writ of mandate with respect to the April 23, 1992, order.

I

SEVERANCE OF CROSS-COMPLAINT NOT AUTHORIZED BY SECTION 170.6

Petitioners contend that because the severance ruling as to SKT occurred *after* Judge Munoz granted SKT's motion for peremptory challenge, such ruling is null and void as a matter of law because he lacked authority to perform this action pursuant to the provisions of Code of Civil Procedure section 170.4 and Los Angeles County Superior Court Trial Court Delay Reduction Rules, rule 1304.3 (hereinafter rule 1304.3; formerly rule 1104.3).[2]

Real party in interest Pinkerton's and respondent superior court, characterizing the cross-complaint against SKT as "an independent action which is

[2]Code of Civil Procedure section 170.4 provides in pertinent part: "(a) A disqualified judge, notwithstanding his or her disqualification may do any of the following: [¶] (1) Take any action or issue any order necessary to maintain jurisdiction of the court pending the assignment of a judge not disqualified. [¶] (2) Request any other judge agreed upon by the parties to sit and act in his or her place. [¶] (3) Hear and determine purely default matters. [¶] (4) Issue an order for possession prior to judgment in eminent domain proceedings. [¶] (5) Set proceedings for trial or hearing. [¶] (6) Conduct settlement conferences. . . . [¶] (d) Except as provided in this section, a disqualified judge shall have no power to act in any proceeding after his or her disqualification or after the filing of a statement of disqualification until the question of his or her disqualification has been determined."

Rule 1304.3 provides: "Upon the making of a timely and proper challenge under Code of Civil Procedure Section 170.6 to an I/C Judge, the Judge shall immediately transfer the case to Department One for reassignment. In no event shall the assertion of a proper challenge,

An action severable from the main action," contend that the disqualification and severance occurred only in that separate "action" and not in the rest of the "action" remaining with Judge Munoz; hence, there was no violation of the principles of Code of Civil Procedure section 170.4. Pinkerton's also contends that neither section 170.6 nor the local Trial Court Delay Reduction Act rules prohibit a trial judge from severing a "late-entering" cross-defendant who has challenged that judge. We discuss first the provisions of section 170.6.

■ "Code of Civil Procedure section 170.6 provides in substance that any party to an action may make a motion, supported by an affidavit of prejudice, to disqualify the trial judge, commissioner, or referee. If the motion is timely and properly filed, the judge must recuse himself without further proof and the cause must be reassigned to another judge. When an affidavit of prejudice has been timely filed, the judge's disqualification is automatic and mandatory. Once properly and timely challenged, the judge loses jurisdiction to proceed and all his subsequent orders and judgments are void." (*Lawrence* v. *Superior Court* (1988) 206 Cal.App.3d 611, 615-616 [253 Cal.Rptr. 748]; internal quotation marks omitted.)

The Legislature did not provide a special definition of "action" in section 170.6. Action is defined generally as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc., § 22.)

■ "The filing of a cross-complaint, although for some purposes treated as the commencement of a new action, is a proceeding in the action commenced by the filing of the plaintiff's complaint which is expressly authorized by statute, the design of the statute being to enable all matters in dispute between the parties 'relating to or depending upon the contract or transaction upon which the action is brought, or affecting the property to which the action relates,' to be determined in a single action, and by a single judgment which shall give to a defendant seeking it such affirmative relief as he is entitled to . . . ." (*Lowe* v. *Superior Court* (1913) 165 Cal. 708, 715-716 [134 P. 190].)

"Generally an action is defined as a proceeding wherein one asserts a right or seeks redress for a wrong. ([Code Civ. Proc.,] § 22.) An action is usually deemed to commence upon the filing of a complaint ([Code Civ. Proc.] §§ 350 & 411.10) and remains pending until the judgment is final. ([Code

whether under Code of Civil Procedure Section 170.6, or any other statute, or any recusal by an I/C Judge, result in the case being redesignated as an M/C [Master Calendar] Case."

Civ. Proc.,] § 1049.) An action is not limited to the complaint but refers to the entire judicial proceeding at least through judgment and is generally considered synonymous with 'suit.' [Citation.] Action is not the same as cause of action. . . . [¶] The courts have generally used the word 'action' to refer to the proceeding or suit and not to the cause of action." (*Nassif* v. *Municipal Court* (1989) 214 Cal.App.3d 1294, 1298 [263 Cal.Rptr. 195].)

Although Pinkerton's cites authorities containing language to the effect that "cross-actions are distinct and independent causes of action," none of those cases are pertinent to, or aid in, an interpretation of section 170.6.[3]

▇ Pinkerton's also argues that permitting the trial judge to sever the cross-complaint involving SKT furthers judicial economy and prevents abuse of the peremptory challenge procedure. Pinkerton's claims that "judicial economy has been served by keeping the case before the judge who has ruled on several motions and demurrers during the past eighteen months," and that "Judge Munoz prevented a clear abuse of Section 170.6." None of these arguments is a persuasive reason justifying a rule which would permit severance for no other reason than to prevent a perceived abuse of section 170.6. Moreover, such reasons are not persuasive arguments to interpret "action" within the meaning of Code of Civil Procedure section 170.6 to be synonymous with "complaint" or "cross-complaint" against a particular party. No party has established that such an interpretation is required by the express provisions of the statute or necessarily furthers the purposes of such statute.

To the extent that section 170.6 envisions abuse of the peremptory challenge provisions by multiple parties whose interests are not adverse, subdivision (3) provides the following remedy: "Under no circumstances shall a

---

[3]For example, in *Shearer* v. *United California Theatres* (1955) 133 Cal.App.2d 720, 723 [284 P.2d 934]), appeal was dismissed on the ground that the plaintiff, who was not a party to the cross-complaint, had no right to appeal from a summary judgment entered in favor of cross-defendants on the cross-complaint. The issue in *Douglas* v. *Superior Court* (1949) 94 Cal.App.2d 395 [210 P.2d 853] concerned mandatory dismissal after the lapse of the five-year period under former Code of Civil Procedure section 583.

Of no assistance to the instant inquiry is *Whistler* v. *Ondulando Highlands Corp.* (1970) 13 Cal.App.3d 108 [91 Cal.Rptr. 879]. In *Whistler*, the trial was bifurcated so that the equitable issues of plaintiff's complaint were tried first; after a cross-defendant filed a section 170.6 challenge to Judge Heaton, another judge heard the trial on plaintiff's equitable issues; thereafter, defendants moved for summary judgment before Judge Heaton on the remaining causes of action of the complaint; on appeal from the summary judgments by Judge Heaton, plaintiffs argued for the first time that Judge Heaton was disqualified to pass on the summary judgment motions; the Court of Appeal noted that "plaintiffs never raised the issue of Judge Heaton's disqualification at the trial level. Instead, they proceeded to a hearing without objection, thereby consenting to the matter being heard by Judge Heaton." (13 Cal.App.3d at p. 118.)

party or attorney be permitted to make more than one such motion in any one action or special proceeding pursuant to this section; and in actions or special proceedings where there may be more than one plaintiff or similar party or more than one defendant or similar party appearing in the action or special proceeding, only one motion for each side may be made in any one action or special proceeding."[4]

As recognized in *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182 [137 Cal.Rptr. 460, 561 P.2d 1148], "The limitation of the statute to 'one motion for each side' ([§ 170.6,] subd. (3)), . . . 'reduces the quality and quantity of the injury caused by the section.' " (*Id.* at p. 197.) If in connection with the granting of a peremptory challenge of a party, the trial court were permitted to sever all pleadings involving that party from the remainder of the action, without any further basis therefore, there would never be an occasion to invoke the provisions of subdivision (3) of section 170.6.

In light of the foregoing, we conclude that when a motion for peremptory challenge pursuant to 170.6 is made by a party, including a cross-defendant, section 170.6 and Code of Civil Procedure section 170.4 do not permit the judge granting such challenge to sever the pleadings of that party for reassignment and to retain the remainder of the action. Thus, without regard to the local Trial Court Delay Reduction Rules, we conclude that nothing in sections 170.4 or 170.6 authorized the trial court to sever the cross-complaint of SKT in connection with the granting of SKT's peremptory challenge.

## II

### No Severance Permitted by Local Rules

" '[The Trial Court Delay Reduction project] clearly represented a fundamental change in the approach to the problem of court congestion. It

---

[4]The propriety of the prior ruling severing the cross-complaint against Patricia Best is not before us. However, the effect of that ruling, and the ruling before us in the instant proceeding, is to emasculate, and indeed contradict, the statutory remedy set out in section 170.6, subdivision (3). By severing any pleading of a cross-defendant making a peremptory challenge from the remainder of the action, the court only encourages multiple challenges which further splinter and multiply the proceedings involving the underlying transaction. On the other hand, subdivision (3) of section 170.6 impliedly contemplates that the entire action be transferred upon the granting of a peremptory challenge so that upon a subsequent peremptory challenge by one of several parties on a "side," the burden would be upon that party to establish that his interests are substantially adverse to those of his codefendant. (*Pappa* v. *Superior Court* (1960) 54 Cal.2d 350, 354 [5 Cal.Rptr. 703, 353 P.2d 311].)

Because the pleading involving Patricia Best had been severed, SKT had no obligation to meet the requirements of subdivision (3) of section 170.6 under the procedural posture of the instant case.

embraced the principle of active judicial management which required that trial judges aggressively monitor and manage litigation from the filing of the first pleading until final disposition. This effort to transfer control of the pace and timing of litigation from the lawyers to the trial judge was a major departure from long-accepted traditional practice.' " (*Reygoza* v. *Superior Court* (1991) 230 Cal.App.3d 514, 522 [281 Cal.Rptr. 390].) "For a civil case, 'the entire purpose of an all-purpose assignment [is] to expedite complex matters by permitting one judge to handle the entire matter from start to finish, acquiring an expertise regarding the factual and legal issues involved which will expedite the process.' " (*Ibid.*)

In an amendment to Government Code section 68612, which became effective on September 22, 1988, the Legislature provided that the procedures, standards and policies adopted by the project trial courts could not only be inconsistent with the rules of court but such courts were also permitted to " 'impose procedural requirements in addition to those authorized by statute' and to 'shorten any time specified by statute for performing an act.' " (*International Union of Operating Engineers* v. *Superior Court* (1989) 207 Cal.App.3d 340, 351-352 [254 Cal.Rptr. 782]; see also Los Angeles County Trial Court Delay Reduction Rules, rule 1302.3.)

Accordingly, a local trial court delay reduction rule, "duly adopted under the mandate of Government Code section 68612, and not expressly prohibited thereby, which either imposes a procedural requirement not authorized by statute or shortens the time specified by statute for performance of an act, will control, to the extent reasonably necessary to carry out and further the provisions and goals of the Act [Trial Court Delay Reduction Act of 1986], in those cases to which the project rules apply." ▇▇▇▇ (*International Union of Operating Engineers* v. *Superior Court, supra,* 207 Cal.App.3d at p. 353.)[5]

Rule 1304.1 provides that "A challenge to an I/C Judge under Code of Civil Procedure Section 170.6 must be made within 15 days of the party's

---

[5]We also note that it has been held that parties to an add-on petition in a coordination action are not entitled to file a peremptory challenge to the coordination judge. The court in *Industrial Indemnity Co.* v. *Superior Court* (1989) 214 Cal.App.3d 259 [262 Cal.Rptr. 544], explained that California Rules of Court, rule 1515 "provides that '[a]ny motion or affidavit of prejudice regarding an assigned judge shall be submitted in writing to the assigned judge *within 20 days after service of the order assigning that judge to the coordination proceeding.*' . . . There is no provision in rule 1544 for a peremptory challenge by a party to an add-on

first appearance . . . ." Rule 1304.3 provides that "Upon the making of a timely and proper challenge under Code of Civil Procedure Section 170.6 to an I/C Judge, the Judge shall immediately transfer the case to Department One for reassignment."

■ It is clear that the local rules require the I/C Judge presented with a timely and proper 170.6 challenge *immediately to transfer the entire case* for reassignment. Having found that SKT's challenge was timely and in proper form, and having granted such peremptory challenge, Judge Munoz had no authority under rule 1304.3 to inquire into the motivations for, or the validity of, the cross-complaint naming SKT or to sever that pleading for reassignment and to retain the remainder of the action.

## III

### SANCTIONS

Pursuant to Code of Civil Procedure section 907 and California Rules of Court, rule 26, Pinkerton's requests monetary sanctions against petitioners and their attorneys "for abusing the judicial process and causing delay." Inasmuch as petitioners are entitled to the relief requested, Pinkerton's request is without merit.

### DISPOSITION

The petition for writ of mandamus is granted. Let a peremptory writ of mandate issue directing respondent superior court to vacate that portion of its April 23, 1992, order severing a portion of the litigation from the remainder of the case, and thereafter to transfer the case to Department One for reassignment. Pending finality of this decision, the stay of proceedings

---

case. Thus, unless section 170.6 itself applies to add-on parties, any peremptory challenge by such parties will be untimely. . . . [¶] We conclude that the authority given to the Judicial Council over coordinated actions is broad enough to empower the Judicial Council to exclude parties from the right to exercise a section 170.6 challenge. [Code of Civil Procedure] Section 404.7 empowers the council to provide 'by rule the practice and procedure for coordination of civil actions[.]' . . . 'The practical effect of such a grant of power is to remove any restraints of statutory consistency on the Judicial Council's rules.' " (*Id.* at p. 263; original italics.)

In the instant case, we need not address the issue of whether the Legislature has similarly authorized the trial courts to adopt rules excluding parties from the right to exercise a section 170.6 challenge. It is apparent that the local rules at issue herein contemplate no such exclusion.

issued herein on May 6, 1992, is modified to permit the respondent to comply with this peremptory writ.

Woods (Fred), J., and Fukuto, J., concurred.