[No. B165668. Second Dist., Div. Five. Aug. 12, 2004.]

AVI GIL, Plaintiff and Appellant, v.
MONET MANSANO, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rules 976(b) and 976.1, only the Introduction, part IV of the Discussion, and the Disposition of the majority opinion and the dissenting opinion in its entirety are certified for publication.

COUNSEL

Law Offices of Gerald Krupp and Gerald Krupp for Plaintiff and Appellant.

Wolf, Rifkin, Shapiro & Schulman and Matthew J. Hafey for Defendant and Respondent.

OPINION

**GRIGNON, Acting P. J.—**

## INTRODUCTION

Three individuals engaged in a business venture together. Two of the individuals purchased the third individual's share of the business. All three entered into a written purchase agreement and a separate written release. The release included an attorney fee provision applicable to an action brought to enforce the release. One of the two remaining owners sued the other for fraud, and the defendant asserted the release as an affirmative defense. The defendant prevailed on summary judgment and was awarded attorney fees pursuant to the attorney fee provision in the release. In the published portion of this opinion, we conclude the assertion of a contractual defense to a tort action is not an "action brought to enforce the contract" and, therefore, the prevailing party is not entitled to an attorney fee award. In the unpublished portion of the opinion, we address the remaining contentions. We reverse the attorney fee award and otherwise affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

I.–III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV. *Attorney Fee Award*

The parties in this case signed a release that included the following attorney fee provision: "In the event action is brought to enforce the terms of this [Release], the prevailing party shall be paid his reasonable attorney[] fees and costs incurred therein." Plaintiff sued defendant for fraud, a tort. Defendant asserted the release as an affirmative defense. The trial court entered summary judgment in favor of defendant based on the release and awarded defendant attorney fees pursuant to the attorney fee provision of the release. We have affirmed the summary judgment in favor of defendant. Thus, defendant is the prevailing party for purposes of attorney fees and costs. We must, therefore, determine whether the attorney fee provision in the release entitles defendant to attorney fees in this case. We conclude it does not.

"Except as attorney[] fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." (Code Civ. Proc., § 1021.) "In any action on a contract, where the contract specifically provides that attorney[] fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney[] fees in addition to other costs." (Civ. Code, § 1717, subd. (a).) "Where a contract provides for attorney[] fees . . . that provision shall be construed as applying to the entire contract . . . ." (*Ibid.*)

"If a cause of action is 'on a contract,' and the contract provides that the prevailing party shall recover attorney[] fees incurred to enforce the contract, then attorney[] fees must be awarded on the contract claim in accordance with Civil Code section 1717." ( *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 706 [75 Cal.Rptr.2d 376].) "Civil Code section

---

*See footnote, *ante,* page 739.

1717 does not apply to tort claims; it determines which party, if any, is entitled to attorney[] fees on a contract claim only. [Citations.] As to tort claims, the question of whether to award attorney[] fees turns on the language of the contractual attorney[] fee provision, i.e., whether the party seeking fees has 'prevailed' within the meaning of the provision and whether the type of claim is within the scope of the provision. [Citation.] This distinction between contract and tort claims flows from the fact that a tort claim is not 'on a contract' and is therefore outside the ambit of section 1717." (*Id.* at p. 708.) Nevertheless, a broadly phrased contractual attorney fee provision may support an award to the prevailing party in a tort action. " ' "[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." ' " (*Ibid.*)

The court must determine whether the contract provides for attorney fees in a tort action under the procedural posture of the particular case. " 'To answer this question, we apply the ordinary rules of contract interpretation. "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. . . . Such intent is to be inferred, if possible, solely from the written provisions of the contract. . . . The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' . . ., controls judicial interpretation. . . . Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. . . ." ' [Citation.]" (*Exxess Electronixx v. Heger Realty Corp., supra,* 64 Cal.App.4th at p. 709.) If the parties do not present extrinsic evidence to interpret the attorney fee provision of a contract, the appellate court determines de novo whether the contractual attorney fee provision entitles the prevailing party to attorney fees. (*Siligo v. Castellucci* (1994) 21 Cal.App.4th 873, 880 [26 Cal.Rptr.2d 439]; *Thompson v. Miller* (2003) 112 Cal.App.4th 327, 334–335 [4 Cal.Rptr.3d 905].)

A tort claim does not enforce a contract. (*Exxess Electronixx v. Heger Realty Corp., supra,* 64 Cal.App.4th at p. 709.) Where a contract authorizes an award of attorney fees in an action to enforce any provision of the contract, tort claims are not covered. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 622, & fn. 9 [71 Cal.Rptr.2d 830, 951 P.2d 399]; *Exxess Electronixx v. Heger Realty Corp., supra,* 64 Cal.App.4th at p. 709.) A defense to a tort action may be based on a provision of a contract. Where a contract authorizes an award of attorney fees in an action to enforce any provision of the contract, a defense to a tort action based on a provision of the contract may have the effect of enforcing the provisions of the contract. (*Exxess Electronixx v. Heger Realty Corp., supra,* 64 Cal.App.4th at p. 712.)

However, the assertion of a defense does not constitute the bringing of an action to accomplish that goal. (*Ibid.*; *Plemon v. Nelson* (1983) 148 Cal.App.3d 720, 724–725 [196 Cal.Rptr. 190].)[3] Raising a defense may not be equated with bringing an action. (*Exxess Electronixx v. Heger Realty Corp., supra,* 64 Cal.App.4th at p. 712.) The language "brings an action to enforce the contract" is quite narrow. (See, e.g., *ibid.*)

"An 'action' is 'a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law[;] . . . [a]n ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.' (Black's Law Dict. (6th ed. 1990) p. 28, col. 1; accord, Code Civ. Proc., §§ 20–22.) . . . In contrast, a 'defense' is '[t]hat which is offered and alleged by the party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks[; . . . it is a] *response to the claims* of the other party, setting forth reasons why the claims should not be granted.' (Black's Law Dict., *supra,* p. 419, col. 2, italics added.)" (*Exxess Electronixx v. Heger Realty Corp., supra,* 64 Cal.App.4th at p. 712, fn. 15, some italics omitted.)

Broad language in a contractual attorney fee provision may support a broader interpretation. (*Exxess Electronixx v. Heger Realty Corp., supra,* 64 Cal.App.4th at p. 712.) Thus, for example, an attorney fee provision applicable to "any dispute under the agreement" is sufficiently broad to include the assertion of a contractual defense to fraud and breach of fiduciary duty causes of action. (*Thompson v. Miller, supra,* 112 Cal.App.4th at pp. 335–337.) Such an attorney fee provision is not limited to an action brought to enforce the agreement. Other broad language has also been interpreted broadly to include tort actions. (*Santisas v. Goodin, supra,* 17 Cal.4th at p. 607 ["arising out of the execution of the agreement"]; *Allstate Ins. Co. v. Loo* (1996) 46 Cal.App.4th 1794, 1799 [54 Cal.Rptr.2d 541] [" 'relating to the demised premises' "]; *Moallem v. Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827, 1831 [31 Cal.Rptr.2d 253] [" 'relating to' the contract"]; *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342 [5 Cal.Rptr.2d 154] ["to which 'this Agreement gives rise' "].)

A similar analysis applies to the construction of statutes authorizing an award of attorney fees. Broad statutory language authorizes attorney fee awards where the statute is used defensively. (*Palmer v. Agee* (1978) 87

---

[3] These cases are to be distinguished from cases in which there is an action on the contract, and the issue is one of apportionment of fees between the action on the contract and related tort actions. (*Siligo v. Castellucci, supra,* 21 Cal.App.4th at p. 879; *IMO Development Corp. v. Dow Corning Corp.* (1982) 135 Cal.App.3d 451, 463 [185 Cal.Rptr. 341]; *Wagner v. Benson* (1980) 101 Cal.App.3d 27, 37 [161 Cal.Rptr. 516].)

Cal.App.3d 377, 386–387 [150 Cal.Rptr. 841] [" 'In any action arising out of Sections 789.5 to 789.11, inclusive, the prevailing party shall be entitled to reasonable attorney[] fees and costs,' " citing Civ. Code, former § 789.12].) Narrow statutory language limited to "actions to enforce" does not authorize attorney fee awards where the statute is used defensively. (Civ. Code, § 1354, subd. (f) ["In any action . . . to enforce the governing documents [of a common interest development], the prevailing party shall be awarded reasonable attorney[] fees and costs"]; cf. *Blue Lagoon Community Assn. v. Mitchell* (1997) 55 Cal.App.4th 472, 476–477 [64 Cal.Rptr.2d 81].)

■ In this case, the attorney fee provision in the release is very narrowly drawn. It requires action brought to enforce the terms of the release. Plaintiff did not bring an action on the release; he sued in tort for fraud. Thus, the mutuality and reciprocity provisions of Civil Code section 1717 are inapplicable. The fraud action is certainly not an action to enforce the release. Neither is the assertion of the affirmative defense of release an action brought to enforce the release. Accordingly, no action was brought by either party to enforce the terms of the release and defendant may not recover attorney fees as the prevailing party in the fraud action.

We sympathize with defendant's position, but we are not permitted to rewrite the narrowly drawn attorney fee provision in the release. Had the attorney fee provision in the release been intended to apply to defensive use of the release, it could have so provided. For example, the attorney fee provision may have read: " 'In the event any party to this Agreement brings suit to enforce any provision of this Agreement, or is required to defend any action the defense to which is any provision of this Agreement, the unsuccessful party agrees to pay the successful party such court costs and attorney[] fees as the court deems just.' " (*Share v. Casiano Bel-Air Homeowners Assn.* (1989) 215 Cal.App.3d 515, 521 [263 Cal.Rptr. 753].) The provision could have been made applicable to any action (1) in which the release was raised, (2) in which a party asserted his or her rights under the release, or (3) involving the release. Instead, the attorney fee provision was made applicable only where action was brought to enforce the release. No such action was brought in this case.[4]

The attorney fee award must be reversed.

---

[4] Defendant argues that the absence of the article "an" before "action" requires a different result. He argues that any action taken to enforce the provisions of the release, including assertion of the release as an affirmative defense in a fraud action, falls within the ambit of the provision. We are not persuaded by this argument. It takes the word "action" out of context. The attorney fee provision applies to "action brought to enforce the terms" of the release. This language contemplates the bringing of a court action.

## DISPOSITION

The award of attorney fees in the amount of $50,000 to defendant is reversed. In all other respects, the judgment is affirmed. The parties are to bear their own costs on appeal.

Mosk, J., concurred.

**ARMSTRONG, J.**—I respectfully dissent.

As the majority notes, the laws of contract interpretation direct us to base an interpretation on the ordinary use of words (*Lloyd's Underwriters v. Craig & Rush, Inc.* (1994) 26 Cal.App.4th 1194, 1197–1198 [32 Cal.Rptr.2d 144]) and to avoid an interpretation which makes the contract unusual or extraordinary. (*Sayble v. Feinman* (1978) 76 Cal.App.3d 509, 513 [142 Cal.Rptr. 895].) I believe that by taking a magnifying glass to the word "action" and ascribing a technical meaning to that word, the majority has violated the rules it cites.

The majority impliedly finds that the parties intended that "action" bear a technical meaning and that they knowingly agreed to only a "narrowly drawn" fee provision. I see no basis for that implied finding. The fee provision in the release seems to be an ordinary one, in which the parties add teeth to their commitment to release all claims by providing that if there is litigation on those claims in violation of the release, the loser pays the winner's fees. In this case, there was litigation in violation of the release, which means, in my view, that fees should have been awarded. The majority has defeated, not enforced, the overall meaning of the release.

It may be that, as the majority writes, "action" has a technical meaning which includes a filing but not an answer, but that is not the only meaning which the law ascribes to the term. "[U]se of the term 'action' does not in all contexts refer to the technical meaning of the term as defined in the Code of Civil Procedure." (*Best v. California Apprenticeship Council* (1987) 193 Cal.App.3d 1448, 1460 [240 Cal.Rptr. 1] [term "action" in Code Civ. Proc., § 1021.5, encompassed administrative proceedings which preceded filing of a writ].) Another court has observed that "An action is not limited to the complaint but refers to the entire judicial proceeding at least through judgment and is generally considered synonymous with 'suit.' (*Palmer v. Agee* (1978) 87 Cal.App.3d 377, 387 [150 Cal.Rptr. 841].) Action is not the same as cause of action." (*Nassif v. Municipal Court* (1989) 214 Cal.App.3d 1294, 1298 [263 Cal.Rptr. 195] ["action" for purposes of Code Civ. Proc., § 583.310].) " 'Generally an action is defined as a proceeding wherein one asserts a right or seeks redress for a wrong. ([Code Civ. Proc.,] § 22.) An

action is usually deemed to commence upon the filing of a complaint ([Code Civ. Proc.,] §§ 350 & 411.10) and remains pending until the judgment is final. ([Code Civ. Proc.,] § 1049.) . . .' [Citation.]" (*Sunkyong Trading (H.K.) Ltd. v. Superior Court* (1992) 9 Cal.App.4th 282, 288–289 [11 Cal.Rptr.2d 504] ["action" under Code Civ. Proc., § 170.6].) These cases teach us that, like many words, "action" is not limited and precise, but general and inclusive. "How the party achieves the goal of enforcing the right in question is not determinative of the right to an award of attorney fees . . . . The impact of the litigation is." (*In re Head* (1986) 42 Cal.3d 223, 228–229 [228 Cal.Rptr. 184, 721 P.2d 65] [Code Civ. Proc., § 1021.5 fees available to prevailing party in habeas corpus proceedings].)

In an everyday sense, "action" includes both an answer and an affirmative defense, for the simple reason that the two are in many ways alike. The defendant has the burden of proof on the affirmative defense just as the plaintiff does on a complaint. The rules which relate to pleading a cause of action in a complaint also apply to pleading an affirmative defense in an answer. Because there is no replication in California, affording a plaintiff a chance to deny the allegations of affirmative defense, they are deemed controverted. If the defendant prevails on the release defense, it will only be because the court has "enforced" the release. (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 1008–1010, pp. 461–465.) Thus, an equitable right of action may properly be asserted as an equitable defense "in an action involving the same subject-matter brought . . . by the plaintiff. The party relying upon such equitable defense must, however, plead it with the same fullness and particularity as is required in cases involving like subjects of inquiry in suits in equity. . . . *He then becomes an actor with respect to the matters alleged by him.* . . . [Citations.]" (*Swasey v. Adair* (1891) 88 Cal. 179, 181–182 [25 P. 1119], italics added.) Raising a release as an affirmative defense is legally the same as bringing an "action" to enforce it. The defendant becomes an actor.

Neither party asserts that the language of the release is ambiguous, and we thus do not have the benefit (or burden) of extrinsic evidence. However, I believe I may confidently state that it is not within the imagination of mortal lawyers to draft an attorney fee clause which provides for fees if the winner filed, but not if the winner defended, and that if lawyers ever managed to agree on such an unusual arrangement, they would document that agreement with elaborate care.

On August 24, 2004, the opinion was modified to read as printed above.