Filed 10/13/20  Thomas v. Lin CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| STEPHEN J. THOMAS et al., | B291508 (c/w B292496) |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. KC068947) |
| TIM CHIH TING LIN, | |
| Defendant and Appellant. | |

---

APPEALS from a judgment and order of the Superior Court of Los Angeles County.  Robert A. Dukes, Judge.  Affirmed.

Landing Law Offices, Stephen J. Thomas; and Robert D. Lipscomb for Plaintiffs and Appellants.

Klapach & Klapach, Joseph S. Klapach; and Timothy A. Lambirth for Defendant and Appellant.

---

Plaintiffs and appellants Stephen J. Thomas and Thomas Business Law Group (collectively Thomas) appeal from the judgment entered after the trial court granted summary judgment in favor of defendant and appellant Tim Chih Ting Lin (Lin). Lin appeals from the court's order denying his motion for attorney fees. Finding no error in either the judgment or the denial of attorney fees, we affirm.

## BACKGROUND

### I. Lin Commits Professional Misconduct

In 2009, Lin was admitted to the State Bar of California and hired by Thomas as an associate attorney. While employed by Thomas, Lin committed numerous acts of professional misconduct in several client matters. Lin's employment was terminated in early 2014, and he was disbarred in 2015.

### II. Lin and Thomas Settle Four Malpractice Lawsuits

Four separate lawsuits against Lin and Thomas arising from Lin's professional misconduct were filed by former clients— the *Chu*, *Dong*, *Jao*, and *Li* actions. A monetary settlement was reached and a release executed in each action.

Of the four, the *Chu* settlement agreement contains the broadest release language. It uses the term "Known Claimants" to refer, collectively, to the plaintiffs in the *Chu*, *Dong*, *Jao*, and *Li* actions, as well as to two other former clients. The agreement includes a representation by Thomas that the Known Claimants "are the only clients of Thomas that have presently made mention that they may, might, did or do have a potential claim against Thomas and/or Lin . . . ." (Emphasis omitted.) It further provides, in relevant part, that "Thomas . . . release[s] and forever discharge[s] Lin . . . from any and all past, present, or

future claims, demands, obligations, actions, causes of action, rights, damages, costs, expenses, and compensation, which Thomas now has related to or in any way growing out of, or which may be the subject of, the [pleadings in *Chu*] and all claims and complaints for personal injury, physical injury, indemnity, emotional distress, lost income, lost earnings, or lost profits, property damage, and all related claims, and any other damages pertaining to the alleged malpractice and wrongdoing involving Lin's actions and inactions related to the Known Claimants . . . ." (Emphasis omitted.)  The agreement also includes an express waiver of Thomas's rights under Civil Code section 1542 related to unknown claims of the Known Claimants.[1]

The *Dong*, *Jao*, and *Li* agreements are more limited in scope, but each includes a release of Thomas's claims against Lin arising from Lin's representation of the respective plaintiff in each case and a waiver of Civil Code section 1542.

The *Dong* agreement contains the following attorney fees provision:  "[I]f any action is brought to enforce or defend, the terms, conditions, and provisions of this [a]greement, . . . the prevailing party will be entitled to all reasonable costs and attorney[] fees incurred in enforcing or defending any of the terms, conditions, and provisions thereof."

---

[1]     Civil Code section 1542 provides:  "A general release does not extend to claims that the . . . releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the . . . released party."

## III. The Current Litigation

### A. Thomas's complaint

After the *Chu*, *Dong*, *Jao*, and *Li* actions were settled, Thomas filed the complaint in the instant action. The first cause of action alleges that Lin committed fraud and intentional misrepresentation by making false promises regarding the performance of his job duties in order to induce payment of his salary. The second cause of action alleges that Lin committed constructive fraud through his professional misconduct, which was an abuse of the trust and confidence Thomas placed in him. The third cause of action alleges that Lin engaged in fraud and negligent misrepresentation by making false or misleading statements about client matters. Finally, the fourth cause of action alleges that Lin breached his employment contract, which required him to provide competent legal representation to Thomas's clients.

As damages, Thomas claimed the loss of clients and the costs associated with defending multiple professional negligence lawsuits.

### B. Lin's answer and cross-complaint

In his answer to the complaint, Lin asserted the affirmative defense that each cause of action was "barred as result of a written release or several written releases, entered into by and between [Thomas] and [Lin]." Lin also filed a cross-complaint, in which he alleged causes of action for breach of contract,[2] breach of the covenant of good faith and fair dealing, negligent

---

[2] The contract alleged to have been breached in this cause of action is a 2009 oral employment agreement between Lin and Thomas.

4

misrepresentation, negligent infliction of emotional distress, and an accounting.

   C.  <u>Lin's motion for summary judgment</u>

   Lin moved for summary judgment on the ground that the *Chu*, *Dong*, *Jao*, and *Li* settlement agreements released Lin from liability for all of Thomas's damages arising from any wrong perpetrated by Lin against the Known Claimants.  Drawing support from Thomas's discovery responses, Lin argued that no evidence existed that Thomas suffered damages as a result of any act or omission by Lin not covered by the releases.

   Thomas opposed Lin's motion, contending that Lin misinterpreted the settlement agreements and that his causes of action were not released because they were "not related to the Known Claimants. . . ."

   The trial court granted Lin's motion for summary judgment, concluding that Lin satisfied his "initial burden of production in establishing that [Thomas] executed a general release that bars the current claims."  Thomas "failed to identify damages 'beyond those compensated for in the [four] settlements[.]'"  "[T]here were no triable issues of material fact with respect to [Lin's] defense that he had been released of liability[.]"  The court subsequently entered judgment in Lin's favor.[3]

   D.  <u>Lin's motion for attorney fees</u>

   Relying on the attorney fees provision in the *Dong* settlement agreement, Lin filed a postjudgment motion seeking $71,440 in attorney fees from Thomas.  The trial court denied the motion, pointing to the contractual language limiting recovery of

---

[3]     The cross-complaint was dismissed without prejudice upon Lin's request.

5

attorney fees only "'if any action is brought to enforce or defend, the terms, conditions, and provisions of [the] agreement.'" Thomas's "original complaint was not a complaint enforcing the agreement, nor . . . was [Lin's] affirmative defense which raised the agreement an 'action' brought to defend the agreement."

     E. <u>Appeals</u>

Thomas appealed from the judgment, and Lin appealed from the order denying his motion for attorney fees. We consolidated the two appeals.

**DISCUSSION**

## I. Standard of Review; Rules of Contract Interpretation

Our review of the orders granting summary judgment and denying attorney fees—which both turn on the interpretation of a contract—is de novo. (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 520 [summary judgment and contract interpretation not involving credibility of extrinsic evidence]; *Tabarrejo v. Superior Court* (2014) 232 Cal.App.4th 849, 869 [legal basis for attorney fees award].)

We apply settled rules applicable to all contracts when interpreting the terms of a settlement agreement. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 (*Winet*).) In doing so, our "fundamental goal . . . is to give effect to the mutual intention of the parties." (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264.) "Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822.)

6

## II. The Trial Court Properly Granted Lin's Motion for Summary Judgment

Summary judgment is properly granted where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment can satisfy the initial burden of establishing that a cause of action is meritless by showing "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (*Id.*, § 437c, subd. (p)(2).) If such a showing is made, the burden shifts to the plaintiff opposing summary judgment to show by setting forth specific facts that a triable issue of material fact exists as to the cause of action or defense. (*Ibid.*)

The basis for Lin's motion for summary judgment was that the four settlement agreements—in particular, the *Chu* agreement—released Lin from all damages sought by Thomas in the complaint and, thus, negated each cause of action.

Under the clear and explicit terms of the *Chu* agreement, Thomas released and discharged Lin from Thomas's *own* claims and damages "pertaining to the alleged malpractice and wrongdoing involving Lin's actions and inactions related to the Known Claimants . . . ." (Emphasis omitted.) As defined in the agreement, the Known Claimants are the plaintiffs in the *Chu*, *Dong*, *Jao*, and *Li* actions, as well as two other former clients. Thus, although Thomas himself is not a Known Claimant, he

7

released his own claims to the extent that they "pertain[] to"[4] Lin's misconduct involving the Known Claimants.

Thomas's causes of action—for fraud, constructive fraud, negligent misrepresentation, and breach of contract—all arise from Lin's professional misconduct while employed by Thomas, including failures to keep Thomas and clients informed, complete discovery, prepare for trial, and file essential documents. As Lin acknowledged in his motion, the complaint does not identify the specific cases or clients affected by these failures. Nevertheless, Thomas's discovery responses demonstrate that his claims and damages all "pertain[] to" Lin's misconduct involving the Known Claimants and are therefore barred.

Lin propounded a series of special interrogatories asking Thomas to identify the "specific acts or omissions by Lin (including, without limitation, the case on which Lin was working when the act or omission occurred)" (emphasis omitted) for each component of Thomas's claimed damages. In response, Thomas only identified specific acts or omissions by Lin in the *Dong*, *Chu*, and *Jao* actions. Thomas's claims and damages "pertaining to" those acts and omissions were explicitly released. Lin thus demonstrated that an element of each of Thomas's causes of action—compensable damages—could not be established. (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 [elements of breach of contract include damages]; *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239, fn. 4

---

[4] "Definitions of the term 'pertain' demonstrate its wide reach: It means 'to belong as an attribute, feature, or function' [citation], 'to have reference or relation; relate' [citation], '[b]e appropriate, related, or applicable to' [citation]." (*People v. Perry* (2019) 32 Cal.App.5th 885, 891.)

[elements of negligent misrepresentation and constructive fraud include damages]; *Anderson v. Deloitte & Touche* (1997) 56 Cal.App.4th 1468, 1474 [elements of actual fraud include damages].)

We conclude that Lin satisfied his burden on summary judgment and that the burden shifted to Thomas to demonstrate a disputed material issue of fact.  As correctly framed by Lin, Thomas was required to produce evidence that he suffered *unreleased* damages caused by Lin—that is, damages that did not "pertain[] to" Lin's misconduct involving the Known Claimants.

Thomas failed to meet his burden.

As evidence of his purportedly unreleased damages, Thomas pointed to his own payment of "a $5,000 deductible for each defrauded client and afterwards an increased cost of insurance at six times the prior premiums and a deductible increased five-fold, and at least 300 hours of [Thomas's] attorney time" to defend the malpractice lawsuits.  But Thomas failed to identify any evidence that these alleged damages were not attributable to—or otherwise did not "pertain[] to"—Lin's wrongdoing involving the Known Claimants, which would render them extinguished by the release.

Thomas also submitted a declaration in which he testified that, during the settlement negotiations, "[he] insisted in each case that whatever [they] did must not include a release of . . . Lin from his general obligations to [Thomas] for damages [Thomas] suffered resulting from [Lin's] misconduct."  Thomas cannot create a triable issue of material fact to avoid summary judgment by simply declaring that he did not intend to agree to the explicit, unambiguous terms of the *Chu* agreement, in which he released his own claims as they "pertain[ed] to" Lin's

9

misconduct involving the Known Claimants. (See *Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299, 303 [""The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding[]"""]; *Winet*, *supra*, 4 Cal.App.4th at p. 1167 ["parol evidence is admissible only to prove a meaning to which the language is 'reasonably susceptible' [citation], not to flatly contradict the express terms of the agreement"].)

We conclude that Thomas failed to satisfy his burden and, therefore, summary judgment was properly granted in Lin's favor.

## III. The Trial Court Properly Denied Lin's Motion for Attorney Fees

Each party to civil litigation must ordinarily pay its own attorney fees. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).) Parties may, however, ""contract out" of the [general] rule' by executing an agreement that allocates attorney fees." (*Ibid.*)

The parties here inserted an attorney fees provision in the *Dong* agreement, which applies "*if any action is brought to enforce or defend,* the terms, conditions, and provisions of th[e] [a]greement" and allows "the prevailing party" to recover "all reasonable costs and attorney[] fees incurred in enforcing or defending" the agreement. (Italics added.) As we affirmed in the preceding section, Lin is entitled to summary judgment in this action based on the release provisions in the settlement agreements, including the *Dong* agreement. Accordingly, there is no question that he is the "prevailing party." (See Black's Law

10

Dict. (9th ed. 2009) p. 1232, col. 2 [defining "prevailing party" as "[a] party in whose favor a judgment is rendered"].)  But whether Lin is entitled to attorney fees is dependent on whether Lin's assertion of the affirmative defense of release constitutes an "action . . . brought to enforce or defend" the *Dong* agreement.[5]

Applying the ordinary meaning of the terms in the conditional clause of the attorney fees provision (see Civ. Code, § 1644), we conclude that the raising of an affirmative defense does not satisfy the requirement that an "action is brought to enforce or defend" the agreement.  (See Black's Law Dict. (9th ed. 2009) p. 219, col. 1 [defining "bring an action" as "[t]o sue; institute legal proceedings"]; *id.* at p. 482, col. 2 [defining "affirmative defense" as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true"].)  "[W]hile an affirmative defense is a 'real *part of* any action' [citation], it does not, in and of itself, constitute an 'action' for purposes of recovering attorney fees."  (*Mountain Air*, *supra*, 3 Cal.5th at p. 753; see also *Gil v. Mansano* (2004) 121 Cal.App.4th 739, 741 (*Gil*) ["the assertion of a contractual defense to a tort action is not an 'action brought to enforce the contract'"]; *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 712 (*Exxess Electronixx*) [declining to "equate raising a 'defense' with bringing an 'action' or 'proceeding[]'"].)

We recognize that when the parties entered into the *Dong* agreement in October 2015, the California Supreme Court had not yet decided *Mountain Air*, *supra*, 3 Cal.5th 744, and a split of

---

[5]     Lin does not contend that Thomas's complaint or his own cross-complaint were actions brought to enforce or defend the *Dong* agreement.

authority existed among the Courts of Appeal regarding whether the assertion of an affirmative defense constituted an action in the context of attorney fees provisions. (Compare *Gil*, *supra*, 121 Cal.App.4th at pp. 742–745 & *Exxess Electronixx*, *supra*, 64 Cal.App.4th at p. 712 with *Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, 274–276 (*Windsor Pacific*), disapproved of by *Mountain Air*, *supra*, 3 Cal.5th 744.) Disagreeing with the narrower definition of action advanced by *Gil* and *Exxess Electronixx*, *Windsor Pacific* held "that an attorney fee clause providing for a fee award to the prevailing party in 'any action or proceeding to enforce or interpret' a contract applies not only where the plaintiff's allegations in the complaint seek to enforce or interpret the contract, but also where the defendant seeks to do so by asserting an affirmative defense raised in its answer." (*Windsor Pacific*, at p. 266.) In so holding, it "regard[ed] the word 'action' . . . as encompassing the entire judicial proceeding, *including any defenses asserted*." (*Id.* at p. 276.)

Although the California Supreme Court, in *Mountain Air*, resolved the split in favor of *Exxess Electronixx* and *Gil* and explicitly disapproved *Windsor Pacific*'s contrary holding (*Mountain Air*, *supra*, 3 Cal.5th at p. 756, fn. 3), Lin nevertheless insists that, at the time of contracting, the parties to the *Dong* agreement intended to adhere to *Windsor Pacific*'s broader definition of action to encompass the assertion of an affirmative defense.[6] Lin contends that the language of the attorney fees

---

[6] Because contracting "parties are presumed to have had existing law in mind when they executed their agreement" (*Swenson v. File* (1970) 3 Cal.3d 389, 394–395), "a contract is to

provision demonstrates this intent because it only makes sense when its conditional clause—"if any action is brought to enforce or defend"—is interpreted "to refer broadly to the filing of any 'action' that seeks either to 'enforce' the release or that requires a party to 'defend' the release through an affirmative defense."

Lin's position, however, is based on the false premise that "[i]t is impossible . . . for a party to bring an 'action' to 'defend' a release." We have no trouble conceiving of such a situation. For example, a party could file a complaint or cross-complaint for declaratory relief to defend a release against claims that it is invalid, unconscionable, or otherwise unenforceable. (See Code Civ. Proc., § 1060 ["Any person interested . . . under a contract . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the . . . contract"]; *River Garden Farms, Inc. v. Superior Court* (1972) 26 Cal.App.3d 986, 1003 [finding no reason why an action for declaratory relief would not be an appropriate remedy for a party to determine the validity of a settlement agreement].) Such an action would be defensive in nature.

Lin's argument suffers from another fundamental flaw. By contending that the clause "if any action is brought to enforce or defend" actually means "if an 'action' is brought 'to enforce' the release or if an 'action' is brought *that requires a party* 'to defend' the release" (italics added), Lin asks us to insert words into, and thus rewrite, the *Dong* agreement in order to confer a right that

---

be interpreted according to the law in force at the time of its execution . . . ." (*Flagg v. Sloane* (1933) 135 Cal.App. 334, 336.)

13

the parties did not bargain for. "That is not a proper judicial function." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1129, fn. 13.) We may not "'. . . read into the contract words which it does not contain so as to change the meaning of the words contained in the contract.'" (*Estate of Bodger* (1955) 130 Cal.App.2d 416, 425 (*Bodger*).) Nor are we "empowered to make for the parties a contractual arrangement which they did not see fit to make themselves." (*Apra v. Aureguy* (1961) 55 Cal.2d 827, 830.) In short, "we do not rewrite any provision of any contract . . . for any purpose." (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 968.)

Lin also argues that providing for attorney fees when a party files a declaratory relief action to enforce a release but not providing attorney fees if the release is only asserted as an affirmative defense is illogical because it encourages rather than discourages further litigation. This argument ignores that our role is to "'. . . give effect to the contract *as made* without regard to its wisdom or folly . . . .'" (*Bodger*, *supra*, 130 Cal.App.2d at p. 425, italics added.)[7]

---

[7] The Supreme Court rejected a similar argument that, because of the similarities between raising a claim in a complaint or cross-complaint and asserting an affirmative defense, "there is 'no logical reason' why a party would 'choose a form for raising its argument that would *foreclose* any possible recovery of attorney fees, when there is another form that would permit them.'" (*Mountain Air*, *supra*, 3 Cal.5th at p. 756.) The court reasoned that "a defendant who pleads an affirmative defense cannot be liable for malicious prosecution, no matter how meritless the defense [citation]; in contrast, a malicious prosecution action may lie if a defendant seeks relief by filing a nonmeritorious cross-

14

Finally, Lin argues that because Thomas's complaint included a request for attorney fees, Thomas is estopped from disputing Lin's entitlement to such fees.  By failing to raise this argument in the trial court,  Lin has forfeited it.  (*Howard v. County of San Diego* (2010) 184 Cal.App.4th 1422, 1429.)

For these reasons, we conclude that Lin's assertion of the affirmative defense of release did not trigger the attorney fees provision in the *Dong* agreement and his motion for attorney fees was properly denied.

## DISPOSITION

The judgment and order denying attorney fees are affirmed.  The parties shall bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.    _____, J.
LUI                                                    CHAVEZ

---

complaint [citation].  Thus, there may be certain situations where a defendant would prefer not to raise a claim by way of a cross-complaint, but instead raise such new matter by asserting an affirmative defense. . . .  [T]hese pleading alternatives do not amount to an unusual arrangement requiring specific language in an attorney fees provision [citation], much less constitute an absurdity requiring [the rejection of] such an interpretation [citation]." (*Ibid.*)

15