Filed 3/25/26  YCS Investments v. County of Santa Clara CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| YCS INVESTMENTS, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> THE COUNTY OF SANTA CLARA, <br><br> Defendant and Respondent. | H052213 <br> (Santa Clara County <br> Super. Ct. No. 17CV311946) |

YCS Investments, Inc. (YCS) sued the County of Santa Clara (County), asserting causes of action for declaratory relief and negligent misrepresentation relating to a 2014 settlement agreement.  The trial court granted the requested declaratory relief but denied the negligent misrepresentation cause of action.  Additionally, in light of the County's victory on YCS's negligent misrepresentation cause of action, the court found that the County was the prevailing party and awarded it over $800,000 in attorney's fees.

YCS appealed both the judgment and the attorney's fees order.  In a previous opinion, this court upheld the judgment.  Now before the court is YCS's appeal from the fee award.  As explained below, we also affirm the award.

## I. BACKGROUND

The description below is drawn in part from our opinion concerning the appeal from the judgment, of which we take judicial notice on our own motion.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a); see also *Pacific Gas & Electric v. City and County of*

*San Francisco* (2012) 206 Cal.App.4th 897, 907, fn. 10 [noting that unpublished decisions may be cited to explain the factual background of a case].)

**A. The Settlement Agreement**

YCS is the owner (or agent of an owner) of the Young Ranch, a 2,150-acre property located partly in Santa Clara County and partly in the City of San José (San José or City). YCS sought to develop residential lots on the portion of the ranch in the County, which is located on a hillside and therefore subject to density limitations in the County's general plan. To satisfy these limitations, YCS proposed to leave open space on the portion of the ranch in San José. However, the County's planning commission denied YCS's application for the proposed project on the ground that it was inconsistent with the County's general plan. After YCS appealed, the County initiated settlement discussions, and in August 2014 YCS and the County entered into a settlement agreement.

In the settlement agreement, YCS agreed to submit an application for a project developing residential lots on the Young Ranch located in the County that, to satisfy density limitations, would leave at least 1,950 acres of open space located in San José. YCS also agreed to submit an application to amend the County's zoning ordinance to permit the open space located in San José to satisfy the proposed project's density limitations. In turn, the County agreed to provide expedited environmental review of the proposed project. However, the settlement agreement stated that the County had not determined whether to approve the proposed project or the zoning ordinance and that the County made no commitment to do so.

In the provision at issue in the prior appeal, the parties agreed that "the current County General Plan does not preclude the Board of Supervisors from considering open space easement dedications in adjacent property in other jurisdictions for purposes of meeting the open space requirements associated with cluster subdivisions."

The settlement agreement also contained provisions concerning remedies. In paragraph 10, the agreement stated that either party may "institute legal action to enforce

this Agreement," to enjoin threatened violations, or to seek specific performance. Paragraph 10 also contained a damages waiver: Excepting claims to enforce express monetary obligations under the settlement agreement, "the Parties hereby waive any and all claims for money damages as a remedy." Finally, paragraph 11 contained a fees provision: "In the event that it is necessary for either Party to enforce this Agreement, the prevailing party shall be entitled to an award of its reasonable attorneys' fees and expenses."

## B. The Dispute over the Settlement Agreement

After YCS submitted a revised project application pursuant to the settlement agreement, another dispute arose. In September 2016, County planning officials told YCS that the proposed project was inconsistent with the County's general plan because YCS had not sought to amend the general plan to allow consideration of open space in San José to satisfy density limitations. Additionally, in February 2017 the County released a draft environmental impact report stating that the general plan would have to be amended to permit consideration of open space dedications in property in other jurisdictions. YCS protested that this position contradicted the County's representation in the settlement agreement concerning the general plan. YCS also paused development of the Young Ranch.

## C. YCS's Claims

In June 2017, YCS sued the County, seeking a declaration that, "as provided in Section 2 of the Settlement Agreement, the Defendant County's General Plan permits consideration of acreage in an adjacent jurisdiction that is subject to an open space easement for purposes of the requirements for cluster subdivisions." (Capitalization omitted.) The following month YCS filed an amended complaint seeking the same declaration. Eight months later, in March 2018, YCS presented a notice of claim to the County asserting that negligent misrepresentations by the County concerning its understanding of the general plan induced YCS to enter into the settlement agreement.

3

The County rejected the claim, and three months later YCS filed a second amended complaint adding a negligent misrepresentation cause of action.

### D. The Merits

The County moved for judgment on the pleadings, arguing that YCS's second cause of action for negligent misrepresentation was barred by government immunity, which precludes tort claims against public entities in general and misrepresentation claims in particular. (See Gov. Code, §§ 815, 818.8.) However, YCS argued that government immunity did not bar its second cause of action for negligent misrepresentation because that cause of action was based on contract rather than tort. The trial court agreed, ruling that the second amended complaint alleged facts " 'consistent with a breach of promise' " and that the " 'the overall flavor of the complaint[] sounds in contract' " and therefore is not barred by government tort immunity.

The trial court also denied the County's subsequent motion for summary judgment, and in an April 2022 trial brief, the County admitted that the interpretation of the settlement agreement asserted by YCS in its declaratory relief action was correct and YCS was entitled to the declaration sought. In November 2022, a bench trial was held concerning YCS's negligent misrepresentation cause of action. The trial court held that the cause of action failed for four reasons. First, it was untimely because YCS did not present a notice of claim to the County until more than a year after learning of the County's alleged misrepresentation. Second, at trial YCS elected to assert a tort claim, which was barred by government tort immunity. Third, to the extent that YCS was asserting a contract claim, the damages that it sought, which were more than $6 million, were barred by the settlement agreement's damages waiver. Fourth, YCS failed to prove any misrepresentation.

In July 2023, the trial court issued final judgment. This judgment entered judgment in favor of YCS on the first cause of action for declaratory relief and contained

4

a declaration that the County's general plan permits consideration of open space in adjacent jurisdictions. However, it entered judgment in favor of the County on the second cause of action for negligent misrepresentation. YCS appealed, and this court affirmed based upon governmental immunity and YCS's failure to present a timely claim.

### E. Attorney's Fees

In August 2023, before YCS noticed its appeal from the judgment, the parties each filed memoranda of costs. YCS moved to strike the County's request for costs on the ground that it, rather than the County, was the prevailing party because it had achieved what YCS contended was its main litigation objective, "to vindicate and enforce the Settlement Agreement," by obtaining declaratory relief. YCS acknowledged that it had failed to prove its negligent misrepresentation claim, but asserted that this claim was "supplemental to and derivative of the declaratory relief claim."

Invoking the fees provision in paragraph 11 of the settlement agreement, YCS sought attorney's fees. YCS argued that it was the prevailing party under the fees provision because it obtained declaratory relief on its first cause of action. In addition, asserting that paragraph 11 was a "narrow fee provision" that applies only to actions to enforce the settlement agreement, YCS argued that the provision was not triggered by its second cause of action because that cause of action was for negligent misrepresentation, a tort, and thus not an action to enforce the contract.

The County in turn moved to strike YCS's request for costs and fees under paragraph 11 of the settlement agreement. The County argued that YCS was judicially estopped from arguing that the second cause of action was not a contract claim because, in opposing the County's motion for judgment on the pleadings, YCS had argued successfully that the cause of action was for contract and not subject to government tort immunity. Alternatively, the County argued that the fees provision was not limited to actions to enforce the agreement, but instead applied whenever the County sought to

enforce the agreement, as the County did by enforcing the agreement's damages waiver against the negligent misrepresentation cause of action.

Finally, while admitting that YCS prevailed on its first cause of action for declaratory relief, the County argued that it was the prevailing party because it obtained greater relief on the second cause of action for negligent misrepresentation. The declaratory relief on the first cause of action, the County argued, was of little legal or practical value because YCS never reinstated its development application after pausing the Young Ranch project in 2017 and instead was seeking to sell the ranch. In defeating YCS's negligent misrepresentation cause of action, the County contended, it achieved far greater relief because it avoided the more than $6 million in damages that YCS sought.

The trial court agreed with the County. In particular, it agreed that YCS's second cause of action for negligent misrepresentation triggered the settlement agreement's fees provision because YCS was judicially estopped from denying that the cause of action was based on contract because it had successfully opposed judgment on the pleadings on that ground. Alternatively, the court held that the fees provision "does not require *an action to be* brought, but rather it simply requires enforcement of the Settlement Agreement," which the County did by successfully asserting the agreement's damages waiver.

The trial court also determined that the County was entitled to attorney's fees and costs because, on balance, it was the prevailing party. Although the court recognized that YCS prevailed on its declaratory relief cause of action, it found that the County prevailed on the negligent misrepresentation cause of action and achieved greater relief in doing so. The court observed that, in spite of obtaining declaratory relief, YCS had not reinstated its project application, and it was " 'abandoning the Project and pursuing a sale of the Project property to the Santa Clara Valley Habitat Agency.' " By contrast, in invoking the damages waiver and otherwise defeating the negligent misrepresentation claim, the County avoided the over $6 million in damages sought by YCS.

6

Finding the attorney's fees requested by the County reasonable, the trial court awarded the County over $800,000. YCS filed a timely notice of appeal from the fee award.

## II. Discussion

### A. The Negligent Misrepresentation Cause of Action

YCS argues that the trial court erred in ruling that the negligent misrepresentation cause of action triggered the settlement agreement's fees provision because that provision applies only to claims based on contract and because the trial court erred in judicially estopping YCS from denying that the negligent misrepresentation claim is based on a contract. We need only consider the first argument.

In interpreting attorney's fees provisions, the ordinary rules of contract interpretation apply. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 752; *Stanisas v. Goodin* (1998) 17 Cal.4th 599, 608 (*Stanisas*).) Under those rules, " 'the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.)' " (*Stanisas*, at p. 608.) In addition, unless used in a technical sense or given a special meaning through usage, the language of a fees provision is interpreted in its " ' "ordinary and popular sense." ' " (*Ibid.*) Moreover, because the parties have not presented extrinsic evidence concerning the provision, and no material facts are in dispute, interpretation and application of the settlement agreement's fees provision is reviewable de novo. (*Exxess Electronixx v. Heger Realty Corp.*(1998) 64 Cal.App.4th 698, 705.)

On its face, the fees provision in paragraph 11 of the settlement agreement is broad and not restricted to any particular type of claim or cause of action. The provision applies whenever a party needs to enforce the settlement agreement: "In the event that it is necessary for either Party to enforce this Agreement, the prevailing party shall be entitled to an award of its reasonable attorneys' fees and expenses." This provision applies to

7

YCS's negligent misrepresentation cause of action because YCS sought over $6 million in damages on that cause of action, and therefore, to avoid such liability, it was necessary for the County to enforce the settlement agreement's damages waiver, which provides that "the Parties hereby waive any and all claims for money damages." Moreover, as the damages waiver was one of the grounds on which the County prevailed on the negligent misrepresentation cause action, by its plain language, the settlement agreement's fees provision was triggered.

YCS does not dispute that, by its literal terms, the fees provision applies to the enforcement of the damages waiver in response to its negligent misrepresentation claim. Instead, YCS argues that the fees provision does not apply because it contains an unstated, implicit restriction: It applies only "to 'actions to enforce' the Settlement Agreement." YCS derives this restriction from paragraph 10 of the settlement agreement, the paragraph preceding the fees provision. In addition to containing the damages waiver, that paragraph states that "[e]ither Party may, in addition to any other rights or remedies, institute legal action to enforce this Agreement . . . ." YCS asserts that the phrase "to enforce" in the fees provision in paragraph 11 of the settlement agreement "must be read in conjunction with the immediately preceding language [in] Paragraph 10 authorizing either party to 'institute legal action to enforce this Agreement.' "

We disagree. Nothing in the fees provision suggests that it is limited to legal actions instituted to enforce the settlement agreement under paragraph 10. The fees provision is not contained in paragraph 10. It does not refer to that paragraph, and it uses different language to describe what triggers application of the provision. Indeed, the fees provision omits the very language that YCS contends that it implicitly incorporates. While paragraph 10 authorizes either party to "institute legal action to enforce this Agreement," the fees provision in paragraph 11 applies in the event it is necessary for either party "to enforce this Agreement." In other words, while both paragraphs use the phrase "to enforce this Agreement," paragraph 11 omits the concept of "institut[ing] legal

8

action" that YCS contends that the settlement agreement implicitly incorporates. YCS does not—and cannot—explain why the fees provision should be interpreted to implicitly incorporate a concept from a prior paragraph it easily could have included but did not. (*Cf. Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73 ["When one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates the Legislature intended to convey a different meaning."].)

*Gil v. Mansano* (2004) 121 Cal.App.4th 739 (*Gil*), which YCS asserts is "directly on point," held that the defendant in that case was not entitled to attorney's fees under a contract because "the assertion of a contractual defense to a tort action is not an 'action brought to enforce the contract.' " (*Id*. at p. 741.) However, in sharp contrast to the fees provision here, the provision in *Gill* was "very narrowly drawn" (*id.* at p. 745) and expressly limited to actions brought to enforce the release containing the provision: " 'In the event action is brought to enforce the terms of this [Release], the prevailing party shall be paid his reasonable attorney[] fees and costs incurred therein.' " (*Id*. at p. 742.) The fees provision in this case contains no such restriction. It applies "[i]n the event it is necessary for either Party to enforce this Agreement"—not, as in *Gil* "[i]n the event *action is brought* to enforce the terms" of the agreement. (*Ibid*., italics added.) Consequently, far from showing that the fees provision here does not apply to the contractual damages waiver successfully asserted by the County, *Gil* demonstrates how the fees provision in the settlement agreement easily could have been drafted to expressly include the restriction that YCS seeks to imply into it.

YCS notes that the fees provision in the settlement agreement could have included language making it applicable to " 'any dispute under the agreement' " or "to disputes 'arising out of the execution of the agreement,' 'relating to the contract,' or 'to which this agreement gives rise.' " That is true. The fees provision in the settlement agreement might have been drafted differently and, in some ways, more broadly. However, it does

9

not follow that the fees provision is unclear or that it does not plainly apply to YCS's negligent misrepresentation claim as a result of the enforcement of the damages waiver.

Finally, YCS asserts that its negligent misrepresentation cause of action was "not 'on a contract' for an attorney fee award." As the settlement agreement does not refer anywhere to claims "on the contract," this assertion appears to be based on Civil Code section 1717, which makes unilateral contractual fee provisions reciprocally enforceable in actions "on the contract." (Civ. Code, § 1717, subd. (a) ["In any action on a contract, where the contract specifically provides that attorney's fees and costs . . . shall be awarded . . . , then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees," whether or not specified by the contract].) However, the County does not need to rely upon Civil Code section 1717 to recover attorney's fees because the fees provision in the settlement agreement is not unilateral: It applies "[i]n the event it is necessary *for either Party* to enforce this agreement." (Italics added.) Moreover, while Civil Code section 1717 does not apply to tort claims, it is well-settled that fees for tort claims may be awarded directly under a contractual fee provision. (*Gil*, *supra*, 121 Cal.App.4th at p. 743 [" 'As to tort claims, the question of whether to award attorney[] fees turns on the language of the contractual attorney[] fee provision . . . .' "].)

We therefore conclude that, under the plain language of the settlement agreement's fees provision, fees may be awarded on YCS's negligent misrepresentation cause of action because it was necessary for the County to enforce the agreement's damages waiver in response to the $6 million in damages that YCS sought on that cause of action.

## B. Prevailing Party

YCS also argues that, even if its negligent misrepresentation cause of action triggered the settlement agreement's fees provision, the trial court erred in ruling that the County was the prevailing party entitled to fees. We disagree.

10

Because YCS obtained the declaration sought in its first cause of action but failed to prove its negligent misrepresentation cause of action and recover the $6 million in damages sought, the results in this case were mixed. (See *Stanisas*, *supra*, 17 Cal.4th at p. 608 [noting that defendant may prevail on a claim where plaintiff fails to obtain relief].) In mixed results cases, the trial court must determine which party obtained greater relief. (*Silver Creek, LLC v. BlackRock Realty Advisors, Inc*. (2009) 173 Cal.App.4th 1533, 1538 (*Silver Creek*).) In so doing, a court " 'should respect substance rather than form, and to this extent should be guided by "equitable considerations." ' " (*Id*. at p. 1539, quoting *Hsu v. Abbara* (1995) 9 Cal.4th 863, 877 (*Hsu*).) Moreover, trial courts exercise "wide discretion" in comparing the relief obtained and determining the prevailing party, and therefore appellate courts "will not disturb the trial court's determination absent 'a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence.' " (*Silver Creek*, at p. 1539; see also *Scott Co. of California v. Blount, Inc*. (1999) 20 Cal.4th 1103, 1109 ["it is within the discretion of the trial court to determine which party prevailed"].)

We see no abuse of discretion here, and the trial court's determination was supported by substantial evidence. The trial court had ample grounds for finding that the County not only prevailed by defeating YCS's negligent misrepresentation cause of action, but also obtained substantial relief by avoiding the more than $6 million in damages that YCS sought. Having sought enormous damages, YCS cannot credibly dispute that the County obtained great relief by avoiding them.

In addition, the trial court had ample grounds for concluding that YCS obtained relatively limited relief on its declaratory action. The declaration did not guarantee YCS the ability to develop the Young Ranch; it merely stated that "the COUNTY's General Plan permits consideration of Adjacent Open Space." In addition, as the trial court noted, far from taking advantage of this declaration by resuming the project it paused in 2017 and reinstating its application for that project, evidence showed that YCS was

11

"abandoning the Project and pursuing a sale of the Project property to the Santa Clara Valley Habitat Agency."  In light of this evidence, the trial court reasonably concluded that the relief that YCS obtained on its declaratory action had relatively limited value, and the County obtained greater relief by defeating YCS's negligent misrepresentation cause of action seeking over $6 million in damages.

YCS objects that it was improper for the trial court to consider that YCS had not reinstated its development application and was considering selling the Young Ranch. According to YCS, the proper inquiry is limited to the extent to which YCS obtained the relief it sought, apparently without regard to the importance of that relief.  We disagree. In cases involving mixed results, courts necessarily must compare the relief obtained and determine which is greater (*Silver Creek*, *supra*, 173 Cal.App.4th at p. 1539), and in doing so, they must "respect substance rather than form" and be guided by " 'equitable considerations.' " (*Hsu*, *supra*, 9 Cal.4th at p. 877.)  Consequently, in comparing the relief obtained on YCS's two claims, the trial court properly considered the declaratory relief's apparent lack of practical value to YCS.

YCS also argues that the trial court erred in considering all of the County's stated litigation goals in determining that the County obtained greater relief.  Those goals were "(1) 'to enforce the waiver of damages clause in the Settlement Agreement'; (2) to show that it 'did not make any misrepresentations as to past or existing fact renegotiating the Settlement Agreement'; (3) to show that the County gave the City the opportunity to review and comment on the Project during the application review process; and (4) to show that the County represented to YCS 'that its position was that the City's approval powers in the RDA are not enforceable.' "  According to YCS, it was improper to consider the latter three goals because they are unrelated to enforcement of the settlement agreement but instead concern the merits of the negligent misrepresentation cause of action.

12

We need not resolve this issue. A judgment or order may not be reversed for error unless prejudice is affirmatively shown. (Code Civ. Proc., § 475; Cal. Const., art. VI, § 13.) YCS has not shown any likelihood that, if the trial court had considered only the County's goal of enforcing the damages waiver, it would have concluded that the declaration obtained by YCS provided greater relief than defeating the over $6 million sought in damages for negligent misrepresentation. While YCS contended that declaratory relief cause of action was its " 'main litigation objective' " and the later added negligent misrepresentation claim was "merely supplemental," the trial court was "not persuaded." Moreover, YCS has not explained why, despite that determination as well as the evidence that the declaratory relief was not significantly valuable and the enormous amount of damages sought for negligent misrepresentation, the trial court would have found that YCS obtained greater relief absent consideration of all of the County's litigation objectives.

We therefore conclude that the trial court did not abuse its discretion in concluding that the County obtained greater relief than YCS and therefore was the prevailing party entitled to attorney's fees under the settlement agreement's fees provision.

## C. Costs

YCS also contends that the trial court erred in awarding a little under $24,000 in costs to the County. According to YCS, the trial court's determination that County was the prevailing party for purposes of costs is based on the same errors as the fees award. As we have rejected YCS's challenges to the fees award, we likewise reject its challenge to the costs award.

### III. DISPOSITION

The order dated May 13, 2024 awarding the County attorney's fees and costs is affirmed.

13

_____
BROMBERG, J.

WE CONCUR:


_____
GREENWOOD, P. J.



_____
DANNER, J.




*YCS Investments, Inc. v. County of Santa Clara*
H052213