Filed 5/14/24  Konkov v. Doubson CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| FYODOR KONKOV,<br><br>    Petitioner and Appellant,<br><br>v.<br><br>NATASHA DOUBSON,<br><br>    Respondent and Appellant. | H050705<br>(Santa Clara County<br>Super. Ct. No. 2009-6-FL-002532) |

This appeal stems from an accounting discrepancy regarding support payments made pursuant to a post-dissolution settlement agreement.  In connection with resolving the discrepancy, the trial court issued two orders awarding a total of $14,000 in statutory need-based attorney fees to Fyodor Konkov (husband), and $10,000 in contract-based attorney fees to Natasha Doubson (wife) on the theory that she had enforced the settlement agreement by seeking judicial intervention to address the accounting issue.  Both parties appealed.

Wife contends that the attorney fees provision in the settlement agreement precluded the award of statutory need-based fees to husband, and that the trial court abused its discretion in only awarding her $10,000 as the prevailing party.  Husband contends wife was not entitled to any fees because she did not enforce the settlement agreement at all.

We conclude that the settlement agreement did not preclude the trial court's award of statutory need-based fees to husband.  We also conclude that substantial evidence

supports the trial court's determination that wife enforced the settlement agreement. Finally, we conclude that the trial court's award of $10,000 in attorney fees to wife constituted an abuse of discretion because it was devoid of any explanation or logic as to how the court determined the amount.

Accordingly, we reverse and remand for further proceedings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Marriage and dissolution*

Wife and husband were married in August 1997.  They had two children, born in 1998 and 2000, and later commenced dissolution proceedings in 2009.

### B.  *2016 settlement agreement*

On November 3, 2016, wife and husband entered into a stipulation and order to resolve various aspects of the dissolution proceedings (settlement agreement).  The settlement agreement stated that the parties "intended to make a final and complete settlement and compromise of the support arrearages due to Husband and any and all claims pending by Wife incident to the dissolution of their marriage."  Pursuant to the settlement agreement, wife would make specified payments to husband over a period of four years, to be characterized as child support arrears.  The total payment amount would vary depending on when wife made the payments—the more quickly she made the payments, the less she was required to pay.  At a minimum, she could pay $150,000 by December 31, 2016; at a maximum, she was required to pay $182,500 by January 1, 2020.

In exchange, and upon full satisfaction of payment by wife, husband agreed to waive rights to certain payments established by prior court orders, all child and spousal support arrears, and any and all spousal support rights or claims against wife.  The listed waivers were "provisional and conditional and will only take effect upon Wife's full payment of the Payment owed to Husband…."

2

Upon execution of the settlement agreement, all pending court dates relating to arrearages, attorney fees or other claims were vacated, and "all litigation in this case will cease immediately…."

The settlement agreement also included an attorney fees provision, at issue in this appeal, which stated: "In the event that either party shall be required to seek judicial intervention for purposes of enforcing this Stipulation and Order, that party shall be entitled to reimbursement of reasonable attorney's fees and costs incurred in enforcing this Stipulation and Order."

### C. 2020 request for order

On September 1, 2020, wife's counsel e-mailed husband, communicating wife's intent to file a request for order regarding an alleged accounting discrepancy in wife's payments under the settlement agreement.[1] According to wife's counsel, the remaining balance to be paid to husband at that time was $4,804.20, yet the records of the Department of Child Support Services (DCSS) showed a remaining obligation of $17,147.47.[2]

One week later, wife filed the request for order, in which she sought: (1) a $15,000 credit for an alleged gift she made to husband in July 2017 when she "was of unsound mind"; (2) a credit of $11,327.50 in Social Security "derivative benefits" that husband allegedly had failed to obtain in connection with wife's disability; (3) a redetermination of wife's remaining support obligations under the settlement agreement;

---

[1] "In a family law proceeding, the term 'request for order' has the same meaning as the terms 'motion' or 'notice of motion' when they are used in the Code of Civil Procedure." (Cal. Rules of Court, rule 5.63(a).)

[2] The settlement agreement provided that wife would make her payments to husband through DCSS. DCSS was created in 1999 as a new state agency for child support enforcement. (*Orange County Department of Child Support Services v. Superior Court* (2005) 129 Cal.App.4th 798, 806; see also Family Code § 17200 ["The Department of Child Support Services is hereby created within the California Health and Human Services Agency. The department shall administer all services and perform all functions necessary to establish, collect, and distribute child support."].)

3

and (4) an award of $9,625 in attorney's fees pursuant to the fee-shifting provision of the settlement agreement. With respect to the remaining support obligations, wife clarified in the request for order that DCSS calculated a remainder of $14,994.73, rather than the $17,147.47 she had identified in her e-mail to husband.

As to the attorney fees, wife claimed that she brought the request for order because husband "did not agree" that the gift and derivative benefits should be credited, thereby "forc[ing] [her] to seek judicial intervention to resolve a dispute," and because DCSS had "improperly imposed" more payment obligations than were set forth in the settlement agreement.

DCSS submitted a response to wife's request for order, stating its position that the $15,000 gift was not a payment for child support because the parties "had a case open with DCSS and all payments for support were to go through DCSS," and wife's own attorney had said the payment was not for support. In addition, DCSS stated that a credit for the derivative benefits wife sought would be "inappropriate under these circumstances" because there was no court order requiring husband to apply for such benefits based on wife's disability, and she had provided no evidence husband actually would have received any. DCSS also conducted an audit of wife's payments and determined that she owed $14,944.73 as of September 30, 2020.

Wife then submitted an ex parte application on November 4, 2020, seeking an order for DCSS to stop withdrawing money from her salary pending the court's decision on her request for order. According to wife, after she had filed her request for order in September 2020, DCSS had continued to withdraw money from her paychecks, but had stopped transferring it to husband.

Following a hearing on the ex parte application in December 2020, the court ordered that, "based on the agreement of the parties," DCSS was to "release monies on hold since 10/01/2020 to [wife]," and "cease further enforcement" pending the evidentiary hearing on wife's request for order.

4

### D. Husband's request for attorney fees

In April 2021, husband filed a request for order seeking $40,400 in attorney fees. Husband sought fees for multiple purposes, including responding to wife's September 2020 request for order and defending against a separate civil action brought by wife. According to husband, he was entitled to fees pursuant to Family Code section 2030, which authorizes an award of "pendente lite" attorney fees to a party in a dissolution proceeding "to the extent that the award is 'reasonably necessary' to compensate that party for maintaining or defending the proceeding." (Family Code, § 2030, subd. (a)(1)[3]; *In re Marriage of Guilardi* (2011) 200 Cal.App.4th 770, 773 (*Guilardi*).)

Wife opposed the request on numerous grounds.[4]

### E. First order awarding statutory need-based fees to husband

The court held a hearing on June 8, 2022 to consider husband's request for attorney fees. In its order entered on July 11, 2022, the court found it "equitable to award $4,000 in attorney fees" to husband pursuant to sections 2030 and 3557 (order No. 1). Section 3557 generally provides that, upon determining that an award of fees is appropriate, that there is a disparity in access to funds to retain counsel, and that one party is able to pay for legal representation for both parties, a court shall award reasonable attorney's fees to a custodial parent or a supported spouse in certain circumstances. (§ 3557.)

The court also set the remaining issues between the parties for trial: (1) whether wife met her obligations regarding child support and spousal support, and (2) the parties' claims for attorney fees.

---

[3] Undesignated statutory references are to the Family Code.

[4] Wife also filed a second request for order on May 12, 2021, in which she sought "clarification of the terms" of the settlement agreement. According to wife, husband had "refused to acknowledge the discrepancy" in the DCSS accounting of her payments, and was instead arguing that mother had failed to comply with the terms of the settlement agreement, thereby voiding it and reviving all pre-existing claims.

### F. Hearing on remaining issues

The trial court held the hearing on the remaining issues on September 22, 2022. The parties submitted trial briefs in advance of the hearing.

In her trial brief, wife stated that she had dismissed two of the initial claims in her September 2020 request for order. First, because she had commenced a separate civil action in Santa Clara County Superior Court seeking to recover the $15,000 "gift" she had paid husband in 2017, she filed a request to dismiss her gift rescission claim. Second, in light of "newly emerged facts and circumstances," wife also dropped her claim for derivative benefits.

Wife's only remaining claim, then, was her request for a declaration that DCSS had erred in calculating the amount she had paid toward the $182,500 obligation. As she stated in her trial brief, "the only claim raised in the [request for order] that the Court needs to address is Claim #3, which asks to declare that as of September 4, 2020 Mother was short by $2,651.46—and not $14,994.73 as reflected in DCSS's records—towards her obligation to pay $182,500."

Wife also requested an additional award of attorney fees pursuant to the fee-shifting provision of the settlement agreement. According to wife, she had been "required to seek judicial intervention" because DCSS refused to correct its calculations and husband refused to acknowledge that DCSS had erred. She sought a total of $55,975 in fees, which she then increased to $64,655 after filing her reply brief.

In his trial brief, husband argued that he should be paid the full $182,500 pursuant to the settlement agreement. According to husband, some of that money was being held "in suspense" by DCSS because wife had created a dispute by bringing her request for order. Because he did not receive the full $182,500 by the deadline, husband argued, the settlement agreement was void by its own terms, and his conditional waiver of spousal support was no longer valid.

6

He also argued that wife was not entitled to any attorney fees under the settlement agreement because she had not enforced its provisions; instead, her September 2020 request for order was "the sole trigger for the current litigation," and husband had no choice but to respond. As he explained it, wife's action merely sought to clarify what she owes and "she's not enforcing anything."

In his reply brief, husband also requested additional attorney fees of $29,178, pursuant to sections 2030 and 3557 and the settlement agreement.

The court held a one-day trial on September 22, 2022. It then ordered DCSS to complete its audit and submit it to the court, and for the parties to submit further responses by November 4, 2022. In connection with their supplemental briefs, each party sought additional attorney fees as well—a total of $72,355 for wife, and $25,613 for husband.

### G. Second order resolving remaining issues

The trial court issued its order resolving the remaining issues on December 23, 2022 (order No. 2). According to the court, the "primary issues in dispute" were: (1) whether wife satisfied her obligation under the settlement agreement to pay a total of $182,500 by November 1, 2020, thereby triggering the waivers in the settlement agreement; and (2) whether wife was required to pay spousal support of $1,013 per month in addition to the amount owed under the settlement agreement.

The court first determined that wife had satisfied her payment obligations under the settlement agreement because she had timely made all payments to DCSS by the deadline, notwithstanding that DCSS had refunded some of the money to her, which she later returned upon discovering it. Therefore, under the terms of the settlement agreement, husband waived his right to spousal support and to bring certain enforcement claims against wife.

Second, the court addressed and rejected an argument husband raised for the first time in his reply declaration—that "all payments, by law, must be applied first to current

7

child support, then current spousal support, then to arrears," so that the $182,500 payment "is treated as child support arrears as per the stipulation and was paid down only AFTER both current support payments were made." The court held that "the parties essentially agreed to delay enforcement of spousal support as it is a provision they are waiving if [wife] satisfies her obligation under the [settlement agreement]."

With respect to the parties' requests for attorney fees, the court held that wife was entitled to fees because she had brought a motion to enforce the settlement agreement and prevailed. As to the amount, the court first stated that "it is unclear whether the total amount sought by wife is reasonable under the circumstances." The court noted that wife sought to recover fees incurred prior to her "motion for clarification" filed on May 13, 2021, but that the settlement agreement only allowed the prevailing party to recover legal expenses incurred in bringing an enforcement action. The court then awarded her $10,000 in attorney fees.

The court also awarded husband $10,000 in need-based fees pursuant to section 2030, based on the parties' disparity in income.

### H. Appeals

Wife filed a notice of appeal on December 27, 2022, in which she purported to appeal both order No. 1 and order No. 2.

Husband then filed a notice of cross-appeal on February 21, 2023, which identified December 27, 2022 as the date of the trial court action he was appealing. We construe that as an appeal of order No. 2.

## II. DISCUSSION

On appeal, wife argues that the fee-shifting provision of the settlement agreement operates as a waiver of statutory need-based attorney fees, so husband was not entitled to any fees pursuant to sections 2030 and 3557. She also argues that the trial court abused its discretion in awarding her only $10,000 in attorney fees, and this court should modify the award to $72,355.

Husband, proceeding on appeal in propria persona, argues wife was not entitled to any attorney fees because she did not enforce the settlement agreement, and this court should vacate order No. 2. In addition, he argues that *he* enforced the settlement agreement, and that wife breached it by requesting modification, relitigating the support arrears, and not paying him the full $182,500 by the deadline. Lastly, he argues that this court should not vacate the orders to the extent they award him need-based fees under section 2030.

## A. *Wife's appeal*

### 1. *Fees awarded to husband*

Wife challenges the $4,000 of statutory need-based fees awarded to husband in order No. 1, and the $10,000 of statutory need-based fees awarded to him in order No. 2. She claims that the language in the settlement agreement regarding attorney fees "means that recovery of attorney fees incurred in enforcing the agreement should be governed by the prevailing party standard, not by the need-based standard of Family Code § 2030." Accordingly, she argues, husband may not seek need-based fees except to enforce statutory rights to child support or custody, which he did not do here.

#### a. *Appealability of order No. 1*

As noted above, order No. 1 was entered on July 11, 2022, but wife did not file her notice of appeal until December 27, 2022. Wife argues that her appeal was timely because (1) order No. 1 was not a final appealable order, so she was required to wait until after entry of order No. 2 to appeal, and (2) even if order No. 1 was a final appealable order, the deadline to appeal was 180 days from the date of entry pursuant to California Rules of Court, rule 8.104(a)(1), because neither husband nor the trial court clerk issued notice of entry of order.

The "one final judgment" precludes appellate review of intermediate rulings until final resolution of the case. (*Reddish v. Westamerica Bank* (2021) 68 Cal.App.5th 275, 277-278 (*Reddish*); Code Civ. Proc., § 904.1.) One exception is the collateral order

9

doctrine, "under which some interim orders are deemed appealable 'judgments' because they are essentially the same as a final judgment." (*Reddish, supra*, 68 Cal.App.5th at p. 278.) "To be appealable, a collateral order must satisfy three elements: the order must (1) finally determine (2) a matter collateral to the litigation and (3) require the payment of money or performance of an act." (*Id.*, citing *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 297-298.)

A pendente lite attorney fees order—issued during the pendency of a proceeding for dissolution of marriage—is directly appealable " 'where nothing remains for judicial determination except the issue of compliance or noncompliance with its terms.' " (*In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 468, quoting *In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119.)

Wife argues the trial court retained the power to revoke order No. 1 because she had requested that the court rescind its award on the grounds the fees were "sought without probable cause to coerce Mother into a settlement in an unrelated civil case." She cites a statement made in her trial reply brief in September 2022 asserting that husband had unreasonably opposed her request for order. In our view, nothing remained for judicial determination with respect to order No. 1 other than compliance with its terms, and wife's statements in her reply brief in September 2022 did not alter that. Order No. 1 was a final appealable order.

However, wife also argues that notice of entry of order No. 1 was never served. The record in this appeal did not include any such notice of entry or proof of service. We issued an order to augment the record with the notice of entry, or proof of service, of order No. 1, if any such notice of entry or proof of service exists. The superior court clerk certified that, after a due and diligent search, no such document could be found.

The 180-deadline in Rule 8.104(a)(1)(C) of the California Rules of Court therefore applies and wife's appeal of order No. 1 was timely. (*Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1456.)

10

### b. Standard of review

Wife's threshold argument is that the parties contractually waived their rights to statutory attorney fees through the language in the settlement agreement, so that the trial court was precluded from awarding husband any statutory need-based fees. She contends the abuse of discretion standard applies.

Although an order granting an award of attorney fees is generally reviewed for abuse of discretion, issues of law concerning entitlement to attorney fees are reviewed de novo. (*Roe v. Halbig* (2018) 29 Cal.App.5th 286, 298 [discretionary decision on propriety or amount of fees to be awarded, but " 'determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo' "]; *Rickley v. Goodfriend* (2012) 207 Cal.App.4th 1528, 1533; *Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378.)

"Deciding whether to award pendente lite attorney fees and deciding the amount of any fees awarded require family courts to resolve questions of law, make findings of fact, and exercise discretionary authority to resolve certain issues." (*In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 25 (*Knox*).) "Each of these aspects of the family court's decision is subject to a different standard of review. Its findings of fact are reviewed under the deferential substantial evidence standard. [Citation.] Its resolution of a question of law is subject to de novo review. [Citation.] Where the Legislature has committed a particular issue to the family's court discretion and the court must weigh various factors and choose from a range of options, that discretionary determination will not be disturbed if it falls within the range established by the applicable legal criteria. [Citations.]" (*Id.*)

Wife's argument here presents a matter of contract interpretation—whether the parties intended for the settlement agreement to operate as a waiver of the right to statutory need-based fees, a legal question we review de novo. "When a trial court's interpretation of a written agreement is appealed and no conflicting extrinsic evidence was admitted, the interpretation of the contract is a question of law which we review de

novo." (*Nava v. Mercury Casualty Co.* (2004) 118 Cal.App.4th 803, 805, citing *WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710; *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165–1166.)

### c. *Analysis*

To ascertain whether the attorney fees provision of the settlement agreement precludes an award of statutory need-based fees, we apply the ordinary rules of contract interpretation. (*Gil v. Mansano* (2004) 121 Cal.App.4th 739, 743 (*Gil*).) " 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation.... Such intent is to be inferred, if possible, solely from the written provisions of the contract.... The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" ..., controls judicial interpretation.... Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning....' " [Citation.]' " (*Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 709 (*Exxess*), quoting *Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 (*Santisas*).) "If the parties do not present extrinsic evidence to interpret the attorney fee provision of a contract, the appellate court determines de novo whether the contractual attorney fee provision entitles the prevailing party to attorney fees." (*Gil, supra,* at p. 743, citing *Siligo v. Castellucci* (1994) 21 Cal.App.4th 873, 880; *Thompson v. Miller* (2003) 112 Cal.App.4th 327, 334–335.)

As noted above, the attorney fees provision of the settlement agreement provides in full: "In the event that either party shall be required to seek judicial intervention for purposes of enforcing this Stipulation and Order, that party shall be entitled to reimbursement of reasonable attorney's fees and costs incurred in enforcing this Stipulation and Order."

In our view, this language does not operate as a waiver by the parties to receive statutory need-based fees. The plain language of the provision in the settlement

12

agreement says nothing about statutory or need-based fees. Instead, the clear and explicit meaning of the provision, interpreted in its ordinary and popular sense, is that it awards fees to the enforcing party only when the specified conditions are satisfied: (1) in the event that either party is required to seek judicial intervention, (2) for purposes of enforcing the settlement agreement. (See, e.g., *Exxess, supra,* 64 Cal.App.4th at p. 709.) The provision does not include any language waiving statutory need-based fees.

Wife analogizes to *Guilardi*, in which a different panel of this court held that the prevailing party fee provision in a marital settlement agreement (MSA) constituted a waiver of the right to receive need-based fees under section 2030. In that case, the wife had unsuccessfully moved to set aside the MSA on the grounds of fraud, mistake and duress. (*Guilardi*, *supra,* 200 Cal.App.4th at p. 772.) She then sought attorney fees for the " 'prosecution of her statutory and noncontractual claims under Family Code sections 2100 *et seq.* and 2122 *et seq.* for the set aside of the parties' Judgment for Dissolution and Marital Settlement Agreement.' " (*Id*. at p. 773.)

The court first considered the plain language of the MSA's fees provision, which stated: " 'If either party brings an action or other proceeding to enforce this Agreement, or to enforce or modify any judgment or order made by a court in connection with this Agreement or to obtain any judgment or order relating to or arising from the subject matter of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and other costs from the other party as established by the court of competent jurisdiction.' " (*Ibid*.) The court also considered the fees provision in light of the agreement's stated overall purpose, which was to " '[r]elinquish any and all past, present, and future claims that each may have against the property or estate of the other party....' " (*Guilardi, supra,* 200 Cal.App.4th at p. 775)

According to the court, that language "broadly encompasses claims either party might bring against the other (or against that person's estate) arising out of the agreement," and the court affirmed the trial court's denial of the wife's motion.

13

(*Guilardi, supra*, 200 Cal.App.4th at p. 775.) It agreed with trial court's conclusion that, although the MSA did not contain an express waiver of fees, "its broad language conveyed an *implicit* waiver of any claims other than those available to the prevailing party in the proceeding." (*Id*. at p. 773.)

The case is inapposite, though, for two reasons. First, in *Guilardi*, the moving party sought need-based fees after losing on her motion. Here, by contrast, husband sought need-based fees to allow him to defend against wife's request for order. Notably, section 2030 authorizes an award of pendente lite attorney fees to a party in a dissolution proceeding to the extent it is reasonably necessary to compensate that party "for maintaining *or defending* the proceeding." (*Guilardi, supra,* 200 Cal.App.4th at p. 773, emphasis added; § 2030.)

The fees provision in the settlement agreement here, however, governs receipt of attorney fees only for the party required to seek judicial intervention to enforce the settlement agreement. In other words, section 2030 applies to both the party maintaining an action and a party defending it, while the fees provision here applies only to the party bringing the action. We do not construe the holding in *Guilardi* as extending to a party seeking need-based fees to defend against a proceeding.

Second, the specific language in the settlement agreement here is distinct from the MSA in *Guilardi*. For instance, the fees provision here applies only where a party "[is] required to seek judicial intervention," as compared to the provision in *Guilardi*, which applied where "either party brings an action or other proceeding…." In addition, the provision here applies only when judicial intervention was required to be sought for purposes of enforcing the settlement agreement, while in *Guilardi* the provision more broadly included any action or proceeding "to obtain any judgment or order relating to or arising from the subject matter of this Agreement." (*Guilardi, supra*, 200 Cal.App.4th at p. 775.)

14

The stated purpose of the settlement agreement here is also narrower than the MSA in *Guilardi*. Here, the parties intended to make a final settlement "of the support arrearages due to Husband and any and all claims pending by Wife incident to the dissolution of their marriage," whereas in *Guilardi*, the broader purpose was to relinquish "any and all past, present, and future claims that each may have against the property or estate of the other party...." (*Guilardi, supra*, 200 Cal.App.4th at p. 775.)

We do not find *Guilardi* analogous, and we do not perceive any implicit waiver in the fees provision of the settlement agreement here.

Wife also challenges the trial court's award of statutory need-based fees pursuant to section 3557. As noted above, in order No. 1, the trial court awarded attorney fees to husband pursuant to sections 2030 and 3557. Because we conclude that the trial court was not precluded from awarding attorney fees to husband pursuant to section 2030, we need not address wife's arguments regarding section 3557.[5]

### 2. *Fees awarded to wife*

Wife argues that the trial court abused its discretion when it awarded her an arbitrary amount of attorney fees.[6] As summarized above, wife sought a total of $72,355 in attorney fees in connection with proceedings stemming from her September 2020 request for order through her supplemental brief filed in November 2022. In support, she submitted billing records from her attorney documenting the work performed over that time period with varying hourly rates. Her attorney billed (1) 136.4 hours between August 2020 and August 2021 at $250 per hour, for a total of $34,100; and (2) 109.3 hours between January 18 and November 4, 2022 at $350 per hour, for a total of $38,255.

---

[5] Wife did not challenge the amount of the attorney fees awards to husband, rather only the entitlement.

[6] This issue is only relevant if we reject husband's argument in his cross-appeal that wife did not enforce the settlement agreement and therefore is not entitled to any fees. As we explain below, we do reject that argument.

15

The trial court declared in order No. 2 that wife "brought a motion to enforce the [settlement agreement] and prevailed. As such, an award of attorney's fees and costs is warranted." However, the court then stated: "[with] that being said, it is unclear whether the total amount sought by Wife is reasonable under the circumstances." The court proceeded to summarize wife's attorney's claimed hours and fees totaling $72,355, noting that it included "propounding discovery, meet-and-confer efforts, drafting the trial brief and supplemental papers, and attending multiple hearings in connection to this motion."

In conclusion, the court stated only that it "awards [wife] $10,000 in prevailing party fees." It did not provide any explanation of how it arrived at that number.

Wife argues that the amount awarded to her "has no connection to the documented hours." We agree.

In general, "[t]he amount of attorney fees to be awarded is within the court's sound discretion, taking into account the type and difficulty of the matter, counsel's skill vis-a-vis the skill required to handle the case, counsel's age and experience, the time and attention counsel gave to the case, and the outcome. [Citation.]" (*Padilla v. McClellan* (2001) 93 Cal.App.4th 1100, 1107; *Olson v. Cohen* (2003) 106 Cal.App.4th 1209, 1217.) "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' " (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.)

There are limits to that deference, though. " 'When the record is unclear whether the trial court's award of attorney fees is consistent with the applicable legal principles, we may reverse the award and remand the case to the trial court for further consideration and amplification of its reasoning. [Citations.]' " (*Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 269 (*Donahue*), quoting *In re Vitamin Cases* (2003) 110 Cal.App.4th 1041, 1052.) Also, a trial court may not exercise its discretion whimsically, " 'and

16

reversal is appropriate where there is no reasonable basis for the ruling or the trial court has applied "the wrong test" or standard in reaching its result.' " (*Donahue, supra,* 182 Cal.App.4th at p. 269, quoting *Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239.) " 'A trial court's award of attorney fees must be able to be rationalized to be affirmed on appeal.' " (*Donahue, supra,* 182 Cal.App.4th at p. 269, quoting *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101 (*Gorman*).) " 'It is the essence of arbitrariness to make an award of attorney fees that cannot be justified by the plaintiffs' request, the supporting bills, or the defendant's opposition.' " (*Donahue, supra*, 182 Cal.App.4th at pp. 270-271, quoting *Gorman, supra,* 178 Cal.App.4th at p. 101.)

In *Gorman*, the court of appeal concluded that, "after much puzzlement and frustration," it could not "surmise any mathematical or logical explanation" for the trial court's reasoning in awarding precisely $416,581.37 in response to a request for $1,350,538.83. (*Gorman, supra,* 178 Cal.App.4th at pp. 52, 101.) It explained that, while it "might be able to conclude that the trial court was acting within its considerable discretion to award reasonable attorney fees if the court had given any one of these [previously stated] reasons or cited any other factor recognized in case law for reducing the lodestar amount… [i]nstead, the number appears to have been snatched whimsically from thin air." (*Id.* at p. 101.)

Similarly here, we cannot discern any mathematical or logical basis for the trial court's award of $10,000 to wife, and the trial court provided no explanation as to how it arrived at that amount.

We can glean only a few determinations that the trial court appeared to make in this portion of order No. 2. First, its statement that "it is unclear whether the total amount sought by Wife is reasonable under the circumstances," followed by an award of less than the requested amount, suggests the trial court considered wife's request unreasonable or excessive to some degree.

17

Second, the trial court appears to have determined that wife was not entitled to recover any fees incurred prior to the request for order she filed in May 2021. The court stated that, "Wife seeks to recover attorney's fees and costs incurred prior to the filing of her motion for clarification of the stipulated order on May 13, 2021. However, as noted above, the stipulated order only allows the prevailing party to recover legal expenses incurred in bringing an enforcement motion."[7]

And third, the trial court appears to have intended some symmetry between the awards to wife and husband, as it awarded $10,000 to each.

Yet, even if the trial court actually made those determinations, we cannot surmise from them any mathematical or logical explanation for awarding precisely $10,000. (*Gorman, supra,* 178 Cal.App.4th at pp. 52, 101; see also *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 624 [review was "complicated by the terse nature of the trial court's ruling itself, which [gave] virtually no explanation for the basis of the substantially enhanced award of fees and costs"; "the order is subject to question regarding the factual basis of the exercise of discretion made"].)

Nor does there appear to be any mathematical or logical explanation for the trial court's award of $10,000 to husband, on which the trial court may have based its award to wife. Husband had requested $25,613 in fees, although the court stated in order No. 2 that husband sought "an unspecified amount." It then concluded that, "[g]iven the disparity in the parties['] income, the Court finds it appropriate to award need based fees," and "the Court awards [husband] $10,000 in [section] [2030] fees." Thus, even if the trial court awarded wife $10,000 to match the amount it awarded husband—and we

---

[7] Wife argues any such determination by the trial court constituted an abuse of discretion because her attorney's "services related to the enforcement of the settlement agreement began not in May 2021 but in August 2020." We need not address this issue because we already conclude the trial court abused its discretion as explained herein, and we remand for the trial court to exercise its discretion to determine the amount of attorney fees to award wife.

do not address the propriety of such a hypothetical approach—the record is still devoid of any reasonable explanation as to how that amount was established.

We caution that we do not hold that an award of $10,000—or any amount higher or lower—constitutes an abuse of discretion. Instead, we hold only that, on this record, we are unable to discern any reasonable basis or explanation for the court's award and therefore we must reverse.

## B. Husband's cross-appeal

Husband argues that wife did not enforce the settlement agreement and therefore was not entitled to any attorney fees. He also argues that wife actually violated the settlement agreement by requesting that it be modified, not timely complying with the payment schedule, and relitigating the support arrears.

### 1. Standard of review

To review husband's argument, we must determine what the parties intended "enforcing" the settlement agreement to mean, and then whether wife did so here, thereby establishing her as the prevailing party entitled to attorney fees. The first inquiry presents a question of law which we review de novo, either in interpreting the settlement agreement or, as explained below, answering the legal question of what it means to "enforce" a contract. (*Gil, supra,* 121 Cal.App.4th at p. 743; *Exxess, supra*, 64 Cal.App.4th 698, 707 [applying de novo review to determine whether particular claims at issue were brought to "enforce the terms" or "declare rights under" the contract at issue].)

The second inquiry requires us to review the trial court's exercise of its discretion and determine whether its findings are supported by substantial evidence. (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 239 (*Douglas E. Barnhart*).) "[W]e will not disturb the trial court's determination absent 'a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence.' " (*Silver Creek, LLC v. BlackRock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533, 1539.) This presents mixed questions of law and fact, which

19

"concern the application of the rule to the facts and the consequent determination whether the rule is satisfied." (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)

### 2. *Enforcing a contract*

As summarized above, the trial court concluded that "[w]ife brought an order to enforce the [settlement agreement] and prevailed." The court did not provide any discussion or analysis of what it means to "enforce" a contract. Nor have the parties briefed the issue on appeal. Because this presents a strictly legal question, we address it here in the first instance.

As a threshold matter, we conclude that wife's requests for order constituted an "action on a contract." Civil Code section 1717, subdivision (a), provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

In *Exxess*, plaintiff requested that the trial court determine the parties' rights and duties under their lease. The court of appeal explained that "such a claim is 'on a contract' for purposes of [Civil Code] section 1717." (*Exxess, supra*, 64 Cal.App.4th at p. 707, citing *City and County of San Francisco v. Union Pacific R.R. Co.* (1996) 50 Cal.App.4th 987, 999-1000; *Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1259.) "An action (or cause of action) is 'on a contract' for purposes of section 1717 if (1) the action (or cause of action) 'involves' an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement, and (2) the agreement contains an attorney fees

20

clause." (*Douglas E. Barnhart, supra,* 211 Cal.App.4th at pp. 241–242; see also, *Eden Township Healthcare District v. Eden Medical Center* (2013) 220 Cal.App.4th 418, 427.)

Wife's September 2020 request for order and May 2021 request for order constitute an action on a contract under Civil Code section 1717, because they involved and arose out of the settlement agreement, sought to determine the parties' rights under that agreement, and contained an attorney fees clause.

However, not all actions on a contract necessarily are brought to "enforce" the contract. In *Exxess*, for instance, the court held that certain of the plaintiff's claims were not brought to "enforce the terms" of the lease at issue. (*Exxess, supra*, 64 Cal.App.4th at p. 709.) Recognizing that Civil Code section 1717, subdivision (a) governs attorney fees which are incurred to enforce a contract, the court explained that a tort claim does not "enforce" a contract. (*Ibid*.) Accordingly, the plaintiff's claims for constructive fraud and breach of fiduciary duty had not been brought to enforce the lease. (*Id*. at p. 709, citing *Santisas, supra,* 17 Cal.4th at pp. 615, 622; *McKenzie v. Kaiser-Aetna* (1976) 55 Cal.App.3d 84, 89 [action for negligent misrepresentation is not an action to enforce terms of contract].)

### *3. Whether wife enforced the settlement agreement*

As we have summarized, the trial court stated only that wife "brought a motion to enforce the [settlement agreement] and prevailed." The court did not provide any explanation as to how or why wife's requests for order enforced the settlement agreement, or make any factual findings supporting its conclusion. Our resolution of this issue here is compelled by two well-settled appellate doctrines: implied findings and waiver.

"Under the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th

21

42, 48 (*Fladeboe*).) "The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment." (*Id.*, citing *Sammis v. Stafford* (1996) 48 Cal.App.4th 1935, 1942.) "The doctrine is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error." (*Fladeboe, supra*, 150 Cal.App.4th at p. 48, citing *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*); *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)

"If the party challenging the statement of decision fails to bring omissions or ambiguities in it to the trial court's attention, then, under Code of Civil Procedure section 634, the appellate court will infer the trial court made implied factual findings favorable to the prevailing party on all issues necessary to support the judgment, including the omitted or ambiguously resolved issues." (*Fladeboe, supra*, 150 Cal.App.4th at pp. 59-60, citing *Arceneaux, supra,* 51 Cal.3d at pp. 1133–1134.) "The appellate court then reviews the implied factual findings under the substantial evidence standard." (*Fladeboe, supra,* 150 Cal.App.4th at p. 60, citing *Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 792–793.)

Applied here, the doctrine of implied findings requires us to infer that the trial court made every factual finding necessary to conclude that wife "enforced" the settlement agreement.[8] We review those findings for substantial evidence.

When the substantial evidence standard applies, the appellant bears the burden of demonstrating that the record does not contain evidence to sustain every finding of fact.

---

[8] Husband has not argued on appeal that wife was not "required to seek judicial intervention," which is one of the conditions in the settlement agreement for entitlement to attorney fees. Accordingly, we do not address the extent to which order No. 2 made any such factual findings and whether they are supported by substantial evidence.

(*Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 512, citing *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658.) "That burden is a heavy one: ' "A party who challenges the sufficiency of the evidence to support a particular finding must *summarize the evidence* on that point, *favorable and unfavorable*, and *show how and why it is insufficient.* [Citation.]" [Citation.] "[W]hen an appellant urges the insufficiency of the evidence to support the findings it is his duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient. He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record when appellant has shirked his responsibility in this respect." ' [Citation.]" (*In re Marriage of Marshall* (2018) 23 Cal.App.5th 477, 487.)

Husband has failed to carry that burden here. He has not summarized the evidence in the record supporting an implied finding that wife enforced the settlement agreement by seeking an interpretation or definition of the parties' rights and duties under the agreement. He has not addressed, for instance, evidence showing that wife brought her requests for order, at least in part, to resolve an apparent accounting discrepancy as to her payments pursuant to the settlement agreement. In her trial brief, wife argued that "the only claim raised in the [request for order] that the Court needs to address is Claim #3, which asks to declare that as of September 4, 2020, [wife] was short by $2,651.46—and not $14,994.73 as reflected in DCSS's records—towards her obligation to pay $182,500." As support, she submitted, among other things, a copy of the DCSS audit provided in August 2022, her paystubs, a spreadsheet showing that she had made her payments and complied with her obligations under the settlement agreement, and relevant discovery documents. Husband has not discussed this evidence and shown why it is insufficient.

Husband argues that wife's actions sought to "modify" the agreement, rather than enforce it. However, an appellant's duty is not satisfied merely by identifying evidence favorable to his position only.

23

Although the September 2022 hearing was not transcribed by a certified court reporter, husband did not provide a settled statement of the proceedings either. (Cal. Rules of Court, rule 8.137.) These record limitations make it impossible for us to determine the nature of any alleged error. The failure to provide an adequate record requires this court to resolve the issue against the appellant. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609-610.) Without a record, either by transcript or settled statement, we must make all presumptions in favor of the trial court's actions. (*Ibid*.; see also, *In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992 ["Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters.*"].)

We are mindful of the fact that husband is self-represented, but this does not exempt him from compliance with the general rules set forth above. We must treat a party who acts as his own attorney like any other party and hold him to the rules of procedure. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.)

Husband has waived his substantial evidence challenge.[9]

### III.    DISPOSITION

Order No. 1 is affirmed. Order No. 2 is reversed. We remand with directions to the trial court to enter a new order awarding $10,000 in attorney fees to husband pursuant to section 2030 and to exercise its discretion to determine the amount of attorney fees to award wife for enforcing the settlement agreement. In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

---

[9] For the same reasons, we also reject husband's argument that wife breached the settlement agreement by seeking to have it modified.

24

_____
                              Wilson, J.

WE CONCUR:

_____
             Greenwood, P.J.

_____
             Bamattre-Manoukian, J.

Konkov v. Doubson
H050705